FRANCIS D. CORKERY & another *vs.* MARY L. DORSEY & another.

Suffolk. November 5, 1915. — March 1, 1916.

Present: RUGG, C. J., LORING, BRALEY, & CROSBY, JJ.

*Equity Pleading and Practice,* Memorandum of findings, Appeal, Parties, Costs. *Trust,* Construction, Spendthrift.

A memorandum of findings of fact, filed by a single justice of this court by whom a suit in equity was heard, is a part of the record of the case on appeal and is entitled to all the weight of a finding made under R. L. c. 159, § 23.

Under a trust instrument conveying the sum of $2,000 to a trustee with directions to pay over to a certain woman, when in the trustee's judgment she "is deserving and in need of aid," whatever part of the fund the trustee may deem for her best

———

interests, in such sums and at such times as the trustee may deem expedient or necessary, with a power given to the beneficiary to dispose by her will of whatever remains of the fund at her death, the trustee is required to exercise prudence and reasonableness in making payments to the beneficiary and should make such payments as a protection against her necessities, and he should not act upon caprice or careless good nature, much less from a desire to be relieved from trouble and the possibility of making a foolish investment.

If the trustee under the above described instrument, within three years after the trust was established, when the beneficiary had become engaged to be married to one who was an estimable man in every way, without any request by the beneficiary but merely because he considered her "deserving" and the "sole owner" of the fund, pays over to the beneficiary the entire balance of the fund remaining in his hands amounting to about $1,939, such conduct cannot be considered an exercise of sound discretion on his part, and, on a bill in equity by one interested as a beneficiary on the death of the life beneficiary without disposing of the fund by her will, the life beneficiary will be compelled to repay to the trustee so much of the fund as was not needed for her immediate necessities.

One, to whom any unexpended balance of a spendthrift trust fund might be paid at the death of a life beneficiary in case she had not disposed of it by her will according to a power given to her by the trust instrument, has a right, in no way depending upon the discretion of the court, to maintain a suit in equity to set aside an improper payment of the fund by the trustee to the life beneficiary irrespective of what motives actuate him in the institution of the suit.

In this case, because of improper motives which actuated the plaintiff, he was not awarded costs.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 15, 1912, by Francis D. and Henry F. Corkery against Mary Louise Dorsey, formerly Fay, and Cornelius O'Callaghan, seeking to compel the defendant Dorsey to repay to the defendant O'Callaghan a sum of money, formerly held in trust by O'Callaghan under a trust deed to which the plaintiffs and the defendants had assented in writing, and paid by the defendant O'Callaghan to the defendant Dorsey in alleged violation of the provisions of the trust instrument.

The first clause of the trust instrument is quoted in the opinion. The second clause provided in substance that if Mary Louise Fay did not dispose of the trust fund by her will, and Francis D. Corkery, one of the plaintiffs, was living at her death, the trustee should hold the fund as a spendthrift trust for his benefit; and the third clause provided that, if there was no testamentary disposition of the fund by Mary Louise Fay and Francis D. Corkery was not living at her death, the residue of the fund should be paid to the children of Mary Louise Fay, if she left any; otherwise to such heirs of Francis D. Corkery as were his "blood rela-

tives." The plaintiff Henry F. Corkery was a brother of Francis D. Corkery.

The suit was heard by *De Courcy*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. The material evidence is described in the opinion. The single justice filed the following memorandum:

"The trust agreement in question is made a part of these findings.

"The trustee, Cornelius O'Callaghan, has paid from the trust fund to the beneficiary, Mary Louise Dorsey (whose name. before marriage was Minnie Fay), the following amounts: June 16, 1910, $57; April 12, 1911, $100; June 8, 1911 (the balance), $2090. Mrs. Dorsey still has unexpended $1360 of this last sum.

"The only complaint made by the plaintiff at the hearing was with reference to the last payment; and of this he seeks the re-payment to the trustee of only the $1360 now in the hands of. Mrs. Dorsey, as he concedes that the portion expended by her should have been paid to her by the trustee if the fund had re-mained in his hands.

"The trustee had known the beneficiary well for twenty years, and was familiar with her habits and her wants; and he made the last payment without being solicited to do so by her or by Mr. Dorsey. On all the evidence I find that, acting in good faith and in the exercise of his honest judgment, Mr. O'Callaghan thought, at the time of the payment, that Miss Fay was 'deserving and in need of aid,' in view of the condition of her health, her unemployment, and her approaching marriage.

"Even if the fund had remained in, or should be restored to, the hands of the trustee, the beneficiary has power to dispose by will of any portion thereof that may not be used by her. The bill in equity is prosecuted by Henry F. Corkery, and I find that he is induced to do so by his ill will against Mr. Dorsey, rather than by a desire to protect his remote contingent interest in the money, or the contingent interest of his brother, who did not appear. For these reasons I should decline to grant the prayers of the plaintiff in any event, so far as the granting of them is dependent on my discretionary power."

A final decree was entered dismissing the bill without costs. The plaintiffs appealed.

*F. G. Bauer,* (*J. M. Fowler* with him,) for the plaintiffs.

*C. M. Davenport,* for the defendants.

RUGG. C. J. This is a suit in equity, whereby the plaintiffs, interested in a trust fund, seek in substance for a revision of the discretion exercised by the trustee in paying over the entire corpus to one beneficiary. The decision turns upon the meaning of this clause in the trust instrument: "First. To pay over to Mary Louise Fay of said Boston when in the judgment of said O'Callaghan the said Fay is deserving and in need of aid, whatever part of said two thousand dollars ($2000.) or its earnings that said O'Callaghan may deem for the best interests of said Mary Louise Fay, in such sums and at such times as he may deem expedient or necessary, but said sum of two thousand dollars ($2000.) or any part thereof or its earnings shall not be subject to the control or interference of the creditors of said Fay, nor alienable by her save that she shall have the right to dispose at her death by any testamentary document, of whatever part of said two thousand dollars ($2000.) and its earnings as may be left at the time of her death." Other clauses provide for further trusts on the death of Mary Louise Fay and for the ultimate distribution of the fund. The case was heard by a single justice, who made this finding: "The trustee had known the beneficiary well for twenty years, and was familiar with her habits and her wants; and he made the last payment without being solicited to do so by her or by Mr. Dorsey. On all the evidence I find that, acting in good faith and in the exercise of his honest judgment, Mr. O'Callaghan thought, at the time of the payment, that Miss Fay was 'deserving and in need of aid,' in view of the condition of her health, her unemployment, and her approaching marriage." A decree was entered dismissing the bill, and the plaintiffs' appeal brings the case before us with a full report of the evidence.

This finding of fact, although filed without request, is a part of the record and is entitled to all the weight of a finding made under R. L. c. 159, § 23. *Cohen* v. *Nagle,* 190 Mass. 4. The familiar rule in such cases is that it is the duty of this court to examine the evidence with care and to decide the case according to its judgment, giving due weight to the finding of the judge. His decision will not be reversed unless plainly wrong, when it depends upon oral evidence of witnesses who testified in person before him. *Goodell*

v. *Goodell,* 173 Mass. 140, 146. *Lindsey* v. *Bird,* 193 Mass. 200. *Sawyer* v. *Clark,* 214 Mass. 124, 126.

A careful study of the evidence does not convince us that the finding of fact was erroneous. The trustee doubtless exercised his honest judgment in good faith in reaching the conclusion in his own mind that Miss Fay was "deserving and in need of aid."

That fact, however, is not decisive. The power conferred upon the trustee was the exercise of reasonably sound judgment. No arbitrary or capricious power was conferred even though honestly exercised. A trustee vested with discretionary power to distribute a fund in whole or in part is bound to use reasonable prudence. The possession of full power or wide discretion by a trustee means the kind of power and discretion which inheres in a fiduciary relation and not that illimitable potentiality which an unrestrained individual possesses respecting his own property. There is an implication, when even broad powers are conferred, that they are to be exercised with that soundness of judgment which follows from a due appreciation of trust responsibility. Prudence and reasonableness, not caprice or careless good nature, much less a desire on the part of the trustee to be relieved from trouble or from the possibility of making a foolish investment, furnish the standard of conduct. *Davis, appellant,* 183 Mass. 499. *Amory* v. *Green,* 13 Allen, 413, 416. *Garvey* v. *Garvey,* 150 Mass. 185, 187. *Wilson* v. *Wilson,* 145 Mass. 490, 492. *Colton* v. *Colton,* 127 U. S. 300, 320, 321. Doubtless a trust might be created which by its terms would make the judgment of the trustee, however unwise it might be, the final test. *Leverett* v. *Barnwell,* 214 Mass. 105. *Gisborne* v. *Gisborne,* 2 App. Cas. 300. But the present instrument does not confer an uncontrolled and absolute discretion.

The conduct of the trustee must be tested by these principles. In view of the finding of the single justice, the real question is whether the trustee failed to exercise sound discretion. *Taft* v. *Smith,* 186 Mass. 31. The money which formed the *corpus* of this trust was accumulated by the savings from a small store by the sister of the plaintiffs. In her family for some fifteen years had lived Miss Fay, for whose benefit this spendthrift trust was established. She was a worthy and industrious young woman, without substantial financial resources, who supported herself by work in a store. The amount of the fund was $2,000. It was established

in December, 1908. Small amounts had been paid to her when ill or for other purposes, about which no question rightly can be made. Then she became engaged to be married, although the time for the wedding was not set and she was not married for nearly a year after the money was paid. The man to whom she was engaged and later married, appears to have been an estimable man in every way. Under these circumstances and without any request from her, the trustee, in June, 1911, less than three years after the trust was established, paid the entire balance of the trust fund, amounting to about $1,939, to Miss Fay. The trustee testified that she asked him for some money and he replied: "Now you better take it all. . . . I thought she was conducting herself like a good girl and I could give it to her. . . . She could take better care of it than I could, and it was not bringing any interest in the Commonwealth Trust . . .; that if she put it in a savings bank, she could get more interest; and I was intending to go to Ireland, and I did not know what might happen, and I thought it was in safe hands to give it to herself. . . . I thought I gave it to the sole owner." Other testimony shows that the trustee thought highly of the man to whom she was to be married, and was influenced by the fact that she had the power of testamentary disposition. But giving full weight to all these factors, it was not within the scope of the trust to terminate it in this way. The trustee was authorized to pay money to her when she "is deserving and in need of aid." These words must be read and interpreted in connection with the whole frame of the trust. Here was a sum of money sufficient to help a young woman over many a rough place if carefully conserved, but not enough to do much toward relieving her from work if she was in health. A spendthrift trust was created so that she would be protected from her own improvidence. The manifest purpose of the settlors was that it should be held as a protection against her necessities, and administered thus for her benefit as a wise father might hold and pay it to her in comparatively small amounts at least for a considerable time. It was not a due execution of the trust to pay it all over within less than three years after the trust was established. At the time of payment to her, the young woman was "deserving." But that was only one of the conditions on which it could be paid to her. She was required to be also "in need of aid." In view of her impending

marriage, she was doubtless in need of some money to procure whatever was appropriate for that event in the way of furniture and otherwise. But she did not need the whole. That is shown, if other proof were needed, by the circumstance that over $1,300 was left a considerable time after the marriage. No pretence is made by the honest family friend who was trustee that she did need the money in the sense of requiring it then for her necessities or comforts. He simply acted under a mistake as to his duty, which was to invest it safely and conservatively, in a savings bank or other equally well recognized way, and hold it not necessarily forever, but for a reasonable period of time, as against her rational needs.

It follows that, upon the facts found, a true interpretation of the declaration of trust did not warrant paying the entire body of the fund to Miss Fay. Such payment to her was a perversion of the trust.

The defendants make no question as to the right of the plaintiffs to maintain the bill. Their right in the fund as remaindermen was vested. *Clarke* v. *Fay*, 205 Mass. 228. They have done nothing to prevent themselves from exercising their rights. There is therefore no room for the exercise of discretion in granting some relief, and their motives in instituting the bill are immaterial. *Dickerman* v. *Northern Trust Co.* 176 U. S. 181, 190. *Bloxam* v. *Metropolitan Railway*, L. R. 3 Ch. 337, 353. *Seaton* v. *Grant*, L. R. 2 Ch. 459, 464. *Davis* v. *Flagg*, 8 Stew. 491. *Clinton* v. *Myers*, 46 N. Y. 511, 520. See *Randall* v. *Hazelton*, 12 Allen, 412, 418. But on this account the plaintiffs are not to be awarded costs.

According to the agreement of the parties, the amount for which the defendants are to account is $1,000. The decree dismissing the bill is reversed. A new decree is to be entered, directing that $1,000 to be repaid by Mrs. Dorsey, formerly Miss Fay, to the trustee, to be held by him in accordance with the terms of the trust, without costs to the plaintiffs.

*So ordered.*