Melvin L. Straus, Appellee, v. Chicago Title & Trust Company et al., Defendants.
Appeal of Mary A. Collins, Appellant.

Gen. No. 36,806.

Opinion filed December ·11, 1933. Rehearing denied and opinion slightly modified December 27, 1933.

CONCANNON & DILLON, for appellant.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, for appellee; DAVID LEVINSON, BERNARD NATH, JOHN J. ABT and FRANK C. BERNARD, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal Mary A. Collins seeks to reverse an order entered by the circuit court of Cook county denying her leave to file an intervening petition in a foreclosure suit, by which she sought to have the property advertised for sale in accordance with the decree of foreclosure; that the fair market value of the property be determined by the court, and that the trustee in the trust deed be directed to bid, for the benefit of the bondholders, an amount equal to the amount found due by the decree, less the amount in the hands of the receiver, and such further amount as the receiver might be reasonably expected to collect during the period of redemption, unless some third party would bid in an amount equal to the market value as determined by the court.

The record discloses that on January 16, 1932, complainant, Melvin L. Straus, as trustee named in the trust deed and chattel mortgage, filed his bill to fore-

close the trust deed securing the balance of the outstanding bonds of the face value of $877,000. The Chicago Title & Trust Co., a corporation, as trustee under a trust agreement known as Number 7765, the maker of the bonds and the grantor named in the trust deed, was the principal defendant. The bondholders were not made parties to the case.

November 10, 1932, a decree was entered finding, *inter alia,* that complainant, Melvin L. Straus, as trustee for the use and benefit of the owners of the unpaid bonds, had a valid lien on the premises for the amount due on the bonds, which aggregated $943,744.89, and it was decreed that unless the Chicago Title & Trust Co., not personally but as trustee, within three days pay to Melvin L. Straus, as trustee, the amounts found due, the property be sold at public sale by the master, to the highest and best bidder for cash, subject to the right of bondholders to apply their bonds in payment of any bids they might make, and that the complainant or any of the parties to the cause, or any bondholder or group of bondholders, might become the purchaser or purchasers at the sale. The receiver was continued in possession of the premises and it was provided that after the report of sale and distribution was made by the master, the court reserved jurisdiction for the administration of the property in the hands of the receiver, to advise and instruct the complainant trustee, in respect to his duties and powers, and to supervise and direct him in the future administration of the trust.

Apparently the master made no move to carry out the terms of the decree by selling the property, and on February 24, 1933, Mary A. Collins, who claimed to be the owner of five $1,000 bonds secured by the trust deed, sought leave to file her intervening petition. Thereafter the matter was continued from time to time, and finally disposed of March 15th, when an order was entered denying her leave to file her offered petition.

The matter was heard and disposed of on the face of the verified petition.

The substance of the allegations of the petition, so far as it is necessary to state here, is that September 15, 1927, the Chicago Title & Trust Co., a corporation, not personally but as trustee under a trust agreement, was indebted in the sum of $950,000 and to evidence this fact executed its 1,500 bonds aggregating $950,000, not personally but as trustee, and to secure the payment of the indebtedness the Chicago Title & Trust Co. executed its trust deed and chattel mortgage conveying certain real estate and personal property to the complainant as trustee; that petitioner purchased five of the bonds of the face value of $1,000 each, paying therefor $5,000. The petition then set up the foreclosure suit, and the entry of the decree; that there was no personal liability against the maker of the bonds and that it had no property other than that described in the trust deed; that the value of the mortgaged property was $700,000; that nothing had been paid on account of the indebtedness found due by the decree, and although more than three months had elapsed since the entry of the decree no steps had been taken to sell the property. The prayer was that the court direct that the decree be complied with and complainant trustee be directed to purchase the property at the sale for the use and benefit of the bondholders for the amount due them as found in the decree, unless a *bona fide* cash bid be made equal to the fair market value of the premises, as determined by the court.

Complainant contends that the order appealed from should be affirmed because (1) even if it be assumed that complainant had the power to bid at the sale on behalf of the bondholders, and make payment of his bid by satisfying the amount of the indebtedness found to be due them, such purchase by complainant would be disastrous to the bondholders because "They would

thereby become tenants in common of the mortgaged property which would thereupon become subject to the liens of their judgment creditors and to the inchoate rights of dower of their husbands and wives. Each of the bondholders, as a tenant in common, would be entitled as a matter of right to maintain a bill for partition,'' and therefore the complainant trustee could not pass a merchantable title; (2) that the trust deed contains no provision which either expressly or by implication empowers the trustee to purchase at the sale on behalf of the bondholders, and thus deprive a bondholder of his right to receive his *pro rata* share of the purchase price in cash; (3) that even if the complainant has the power to purchase the property on behalf of the bondholders, such power is discretionary and the court will not compel the trustee to exercise the power unless the trustee is guilty of gross negligence or misconduct, and that no such charge is made; (4) that no bondholder has a right to intervene in the suit except upon a showing that complainant has fraudulently failed to perform his duties and that no such charge is made; and (5) that the petitioner is guilty of laches because she sought to intervene in the foreclosure proceeding August 27, 1932, and did not present her present petition for six months thereafter; that she knew of the provisions of the trust deed and of the decree.

It is a universal rule of law that a trustee is in duty bound to see that the property intrusted to his care is not lost to the beneficiaries. Courts will take judicial notice that property sold under foreclosure seldom, if ever, brings a figure at all commensurate with its value, and that under the present financial condition of the country there is great depreciation in the values of real estate, and that a foreclosure sale of property will bring far less now than in normal times. *Atchison, T. & S. F. Ry. Co. v. United States*, 284 U. S. 248;

*Morris Plan Bank of Richmond v. Henderson,* 57 F. (2d) 326. In these circumstances we think the property in question ought not to be sold at a price which will result in great loss to the bondholders, if this can be avoided by having the property bid in for the amount of the indebtedness, by the trustee, for their use and benefit. Of course it may be said that any sale made by the master must first be approved by the court before it is binding and in this way the bondholders are protected. But since the decree expressly provides that the property is to be sold at once, we think the trustee ought to be directed to bid the amount of the indebtedness unless a cash bid is received equal to the upset price established by the court.

The trust deed provides that in case of default the trustee may, without any action on the part of any bondholder, declare all bonds immediately due and payable, and may proceed to protect the trust by any means which he may deem most effectual; that in case of a foreclosure sale of the property, any bondholder or the trustee may bid and purchase the property and apply the amount due on the bonds in payment of his bid; that the powers, duties and rights of the trustee may be exercised by him ''without the possession or production of any of such bonds or coupons or proof of ownership thereof''; that in all suits or transactions relating to the trust deed or the mortgaged property the trustee is deemed to be the representative of the bondholders, and that in no case shall it be necessary for him to notify any bondholder or make any bondholder a party to any suit or proceeding. Under these provisions we think the trustee may foreclose the trust deed, purchase the property at the sale for the benefit of the bondholders, and apply the amount due on the bonds, as found by the decree, in payment of his bid without the production of the bonds, all of which, of course, will be subject to the approval of the chancel-

lor, who will protect the rights of each and every bond-holder. *Hoffman v. First Bond & Mortgage Co. of Hartford, Inc.,* 116 Conn. 320; *Nay Aug Lumber Co. v. Scranton Trust Co.,* 240 Pa. St. 500; *First Nat. Bank of Wichita v. Neil,* 137 Kan. 436; *Silver v. Wickfield Farms,* 209 Iowa 856; *Sturges v. Knapp,* 31 Vt. 1; *Werner, Harris & Buck v. Equitable Trust Co.,* 35 F. (2d) 513 (C. C. A.).

In the *Hoffman* case (116 Conn. 320), the trustee of a mortgage, over the objection of an intervening note holder, was authorized by the court to purchase the property on foreclosure sale for the benefit of the note holders, and to apply the mortgage indebtedness in payment of his bid, although the mortgage did not expressly authorize the trustee of the trust deed to purchase the property. That a court of equity had authority to continue his trusteeship under the mortgage after the sale, that the property be managed and conserved by the trustee under control of the equity court until it could be sold without unnecessary sacrifice, and that an action of the objecting note holder for a partition or a sale of the property or a division of the proceeds, brought shortly afterward, could not be maintained. The facts in that case disclosed that chiefly owing to the depressed condition of the real estate market, the sale to the trustee and the management of the property by him was for the best interest of the note holders. It was contended that after the sale the defendant held title of a dry and passive trust. In passing on this the court said (p. 324): "Clearly, up to the time of the foreclosure sale, the defendant was and acted as trustee of an express trust created by the mortgage, with active powers and duties thereunder." And (pp. 325, 326): "No express provision is made for subsequent sale by the trustee in case of its own purchase at the foreclosure sale, and the appellant maintains that upon such purchase the defendant

became a mere passive depositary of the property and holds the bare legal title without discretion and without active duties, so that the *cestuis que trustent* are entitled to possession of the property and may call upon the trustee for a conveyance of the legal estate. . . . 'Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity and must be exercised in a reasonable manner.' 3 Pomeroy's Equity Jurisprudence (4th ed.) p. 2428. . . . It is one of the most important and essential powers of a court of equity to raise the implications growing out of the state of trust property, the purposes to be accomplished and the mode adapted to that end, without violence to or forced construction of the trust instrument. *Sturges v. Knapp*, 31 Vt. 1, 52. In *Nay Aug Lumber Co. v. Scranton Trust Co.*, 240 Pa. St. 500, 87 Atl. 843, as in the present instance, the mortgage did not expressly confer upon the trustee for bondholders power to bid in the property at foreclosure sale, yet it was held that the trustee had implied power to do so, for the benefit of the bondholders, at a figure sufficient to cover the debt, interest and costs, and not in excess of the value of the property." And continuing the court said (pp. 327, 328) : "The trustee was the constituted representative and protector of noteholders who are numerous, widely scattered, and unorganized, and therefore impotent to effectively protect their own interests from sacrifice at a forced sale, precipitated by a third party, in a demoralized market.

"When default of payment of the mortgage debt occurred and until foreclosure was consummated, the

trust was active and the trustee's duties correspondingly so. 'It not only is not a dead, dry trust, but is one of the most active and momentous responsibility.' *Sturges v. Knapp, supra,* p. 55. . . . It would be absurd to regard the trustee's duty as terminated at the very time when its protection was most needed. If it had stood by and permitted the property to be sold for a fraction of its value, the trustee might have been exposed to the charge of 'supine negligence or wilful default,' which was sustained in *Watson v. Scranton Trust Co.,* 240 Pa. 507, 512, 87 Atl. 845, a sequel to *Nay Aug Lumber Co.* against the same defendant, *supra.*

"In an emergency a court of equity may, for the preservation of the trust and the protection of the beneficiaries from loss, even authorize a trustee to depart from the terms of the trust agreement. . . .

"Considerations similar to those which justify the right to bid in at the foreclosure sale dictate that the trustee hold and administer the property acquired thereby until such time as it can be disposed of without unnecessary sacrifice and loss to the noteholders. This right and duty would seem to be a necessary corollary and consequence of the right to bid and buy. If, as the plaintiff claims, the trustee's duty be, instead, immediately after having so acquired the title, to make another forced sale in the same abnormally depressed market, the exercise of the right to purchase at the foreclosure sale would be but a futile gesture."

In *Nay Aug Lumber Co., supra* (240 Pa. St. 500), it was held that although the trust deed did not expressly authorize the trustee to purchase at foreclosure, he had power to do so, and it was further held that although the trust instrument failed to define the powers and duties of the trustee, and there was no provision authorizing him to sell the property after purchasing it, he could convey good title. The court

there said (p. 504): "It is difficult to see any good reason why a trustee should not be permitted to bid at a foreclosure sale, if it be necessary to protect the interests of the bondholders"; and that obviously this could be done if such a provision was in the trust agreement.

In *First Nat. Bank of Wichita v. Neil* (137 Kan. 436), the right of a trustee to purchase for the benefit of the bondholders at a foreclosure sale was upheld although the trust deed did not contain an express provision authorizing this; that whether a trustee would be warranted in purchasing the property at foreclosure depends upon the facts and circumstances as disclosed by the evidence. The opinion was filed April 8, 1933. The court there discusses the *Nay Aug Lumber Co.* case, 240 Pa. St. 500; *Equitable Trust Co. v. United States Oil & Refining Co.*, 35 F. (2d) 508, which was taken on appeal to the Circuit Court of Appeals and there entitled *Werner, Harris & Buck v. Equitable Trust Co.*, 35 F. (2d) 513; *Silver v. Wickfield Farms*, 209 Iowa 856; *Detroit Trust Co. v. Stormfeltz-Loverley Co.*, 257 Mich. 655, and other authorities, and quoted from the Michigan Supreme Court where that court approved of the holding in *Equitable Trust Co.*, 35 F. (2d) 513 (C. C. A.), disapproved of the holding of the United States Circuit Court of Appeals in the *Equitable Trust Co.* case, and approved of the holding of the Supreme Court of Pennsylvania in the *Nay Aug Lumber Co.* case, and on this question said (p. 446): "We are not convinced by the reasoning of *Equitable Trust Co. v. United States Oil & Refining Co.*, and *Werner, Harris & Buck v. Equitable Trust Co., supra,* that at least under the deed of trust under consideration, the holder of the $100 bond or of eleven $100 bonds can say that he may gamble as he will with his bonds and be the sole judge of whether the trustee can bid for him or not, and that the court cannot say un-

der all the equities of the case that the trustee shall bid on behalf of all the bondholders.

"We are persuaded the holding of the Pennsylvania court in *Nay Aug Lumber Co. v. Scranton Trust Co., supra,* that there is no good reason why a trustee should not be permitted to bid at a foreclosure sale, if it be necessary to protect the interest of bondholders, is more reasonable and equitable and should be followed."

In *Werner, Harris & Buck v. Equitable Trust Co.,* 35 F. (2d) 513, it was held that on foreclosure sale, where there was no provision in the trust deed authorizing the trustee to bid at the sale on behalf of the bondholders, the court could not confer such authority on him. The court there refused to follow the *Nay Aug Lumber Co.* case, quoting with approval the language of the trial judge reported in 35 F. (2d) 508, as follows: (p. 514): "I am unable to bring myself in accord with the reasoning of the court in the case cited. *Nay Aug Lumber Co.* case. As it appears to me, the purchaser and holder of bonds had the right and reason to expect that, if there were a default in the payment of bonds under the trust deed, in case of foreclosure the property covered would be sold, and that he would receive his proportionate amount which the property realized in cash, and, moreover, I believe that this should be his right. If the proposed plan is adopted, he becomes unwillingly bound to cast his fortunes with the majority of the bondholders and to be subjected to the subsequent hazards of a greater loss than he would sustain by a sale in regular course for cash. In addition to this, we are confronted with the cumbersome and annoying circumstance of the court still necessarily retaining jurisdiction of the case for the purpose of authorizing and supervising future sales of the property by the trustee."

We are in accord with the reasoning of the courts of Connecticut, Pennsylvania, Kansas and Iowa,

rather than with the Federal Court and the Supreme Court of Michigan.

In the instant case, we think the court erred in not permitting the petition to be filed, and ruling the defendant to answer.

From what we have said, we think it appears that in case the property is purchased by the trustee for the benefit of the bondholders, he will have active duties to perform under the direction of the chancellor, and can convey good title to the property when the court thinks this should be done; and that the bondholders' only interest is to receive their share of the proceeds of such sale.

We think it further appears that the discretion of the trustee as to whether he will purchase the property at the sale is not conclusive upon the chancellor. *Corkery v. Dorsey*, 223 Mass. 97.

Complainant further contends that the order appealed from should be affirmed because the petitioner is barred by laches. In support of this it is said that August 27, 1932, six months prior to the date on which the intervening petition was presented to court, the intervenor presented another petition in which she alleged her ownership of the five $1,000 bonds and prayed leave to intervene as a party defendant; that afterward orders were entered continuing the intervenor's motion for leave to file the original petition, the motion being finally continued to February 25, 1933, on which date the intervenor abandoned her original petition and then presented the petition involved in this appeal; that since August 27, 1932, the petitioner has received notice of all proceedings in the foreclosure suit and did not object or except to any order entered nor to the decree; that "She was advised by the decree itself that no provision was made for the purchase of the mortgaged property by the complainant on behalf of all of the bondholders." We

think the contention cannot be sustained. In the first petition she sought to intervene as a defendant, while in the instant case she is seeking to have the property sold and bid in by the trustee, under the circumstances above mentioned.

The decree of foreclosure was entered November 10, 1932. Nothing has been done toward the selling of the property since the decree was entered, so that we are unable to see how complainant would be in any wise prejudiced.

The order of the circuit court of Cook county appealed from is reversed and the matter remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded with directions.*