Chicago Title and Trust Company et al., Appellants, v. Leslie H. Bamburg et al., Defendants. Sam Bernstein, Appellee.

Gen. No. 37,536.

1

2

Opinion
filed December 11, 1934.

KIRKLAND, FLEMING, GREEN & MARTIN, of Chicago, for appellant Committee Organized Pursuant to Deposit Agreement Dated as of May 27, 1930 for the Protection of the Holders of Certain First Mortgage Bonds Sold by the Equitable Bond and Mortgage Company, said Committee Consisting of Holman D. Pettibone, Walter J. McGuire, Harold M. O'Brien, H. E. Deve-

reaux, Frederick J. Stebbins, Nicholas H. Dosker, C. A. Mueller and Grant L. Hughes.

LITSINGER, HEALY, REID & BYE, of Chicago, for appellant Chicago Title & Trust Co.

HYMAN J. ROSENBERG, of Chicago, for appellant J. A. Paasche; VERNON M. WELSH, CHARLES R. MORROW and DAVID FISHER, all of Chicago, of counsel.

SHULMAN, SHULMAN & ABRAMS and NORMAN ASHER, all of Chicago, for appellee; MEYER ABRAMS, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

On July 7, 1930, complainant trustee filed its bill in chancery to foreclose a mortgage executed by Leslie H. Bamburg, one of the defendants, on May 15, 1926, whereby he conveyed to the trustee certain real estate situated in the City of Chicago, Cook county, Illinois, to secure an issue of bonds in the aggregate amount of $765,000. The cause was put at issue in the usual way and the evidence taken. On April 2, 1931, a decree was entered finding the amount due and directing that in further default of payment the property should be sold by the master for cash to satisfy the indebtedness; "that the complainant or any of the parties to this cause or any bondholder or group of bondholders may become the purchaser or purchasers at said sale," and that any purchaser or purchasers might pay the amount bid by delivering to the master unpaid bonds or interest coupons secured by the trust deed, but that sufficient cash should be paid to meet the costs and expenses of the proceeding. No sale, however, was made under the decree.

On March 13, 1934, the intervenor, Sam Bernstein, filed his amended petition, setting up that he was the owner of bonds to the amount of $18,200, and averring

that by reason of financial conditions the decree theretofore entered was not enforceable, there being no cash bidders who would purchase the property at its fair cash market value; that a bondholders' protective committee organized about May 7, 1930, had accumulated in its possession over 93 per cent of the bonds and also acquired the equity of redemption, and intended to make a nominal bid at the sale; that nondepositors would receive the proceeds of this nominal bid; that the maker of the bond issue was insolvent and a deficiency decree against him would be of no avail; that it was the duty of the trustee to protect all bondholders alike, and that there were provisions in the trust indenture which would empower the court to direct the trustee to bid the full value of the premises (although there was no specific provision to that effect) and to fix the terms and provisions of the management of the trust estate. The prayer of the petition was that all parties, including the bondholders' committee, should be required to answer; that the court fix and determine an upset price based on the value of the premises; that the master in chancery be directed to proceed with the sale pursuant to the terms of the original decree; that in the event there was no bona fide bidder for cash the trustee should be directed to bid at such sale in its representative capacity, for the use and benefit of all bond owners, the full value less an amount sufficient to cover the income of the premises pending the period of redemption, and that in the event of a failure to redeem the master be directed to convey the premises to the trustee and the trustee authorized to issue beneficial trust certificates to the bond owners in accordance with their respective holdings;. that the court might retain jurisdiction of the subject matter of the trust, etc.

Answers were filed, and the matter coming on upon proofs submitted in open court, a supplemental decree was entered March 17, 1934. It found that the court

had jurisdiction of the subject matter and of the parties; that the decree theretofore entered had expressly retained jurisdiction of the parties and of all matters not disposed of, including the administration of the premises and property, and also that the court reserved jurisdiction of the subject matter and of all persons to advise and instruct complainant as to its powers and duties as trustee under the trust deed and to direct complainant in the administration of the trust, and to provide for the prompt distribution to persons entitled thereto under the decree; that due to the financial condition of the country there is no market to sell the real estate and no cash bidders who would bid or purchase the premises at its fair cash market value; that such sale would not be a real sale of the premises commensurate with the real value thereof and would result in great loss to the bondholders; that the terms and provisions of the decree theretofore entered could not be enforced and the trustee was in no position to administer the trust and distribute the proceeds to the beneficiaries unless the terms and provisions of the decree were modified so that the trust might properly function and operate; that a court of equity pursuant to its general equity jurisdiction has inherent powers to administer a trust estate so that the trust will not fail; that in an emergency the court of equity may for the preservation of the trust and for the protection of the beneficiaries from loss, even authorize a trustee to depart from the strict terms of the trust agreement; that such an emergency existed, and the court was therefore empowered for the purpose of preserving the trust property and for the enforcement of its decree and the execution of the terms thereof, to depart from the strict terms of the trust agreement; that the property was known as the Mozart Apartments, located in Chicago, and consisted of a 14-story and basement, reinforced concrete apartment hotel building, containing 129 apartments of 1

room and kitchenette and 1 two-room apartment, all completely furnished and equipped as residential apartments; that on or about May 27, 1930, following the default in the payment of interest on the first mortgage bonds and pursuant to the request of holders of the bonds and with the knowledge and approval of the trustee, the bondholders' protective committee was organized pursuant to a deposit agreement of that date and subsequently amended; that the committee is now composed of persons named; that it issued a call for the deposit of the bonds, and that pursuant to this call it had on deposit as of March 1, 1934, $701,600, or 93.23 per cent of the outstanding unpaid bonds; that the committee has maintained an office and clerical and stenographic force and agreed to pay a certain fee to the depositary, and to issue certificates of deposit, etc.; that services rendered by the committee and the depositary, including the necessary costs, expenses, etc., were worth not less than $30,000 as of March 1, 1934, including fees or compensation to the members of the committee; that no part of these costs and expenses had been paid; that this committee authorized the Chicago Title & Trust Co. as trustee to foreclose and furnish indemnity to it in connection therewith; that the committee was further authorized to procure concerted and unified action by the bondholders, in order that the full and unincumbered title to the property might be acquired for the bondholders, in the event that no adequate bid should be received for the property at the foreclosure sale; that all known owners or holders of the bonds had been invited to deposit their bonds with the committee and to participate in the reorganization of the property; that certain of the holders of the bonds had determined that the organization of such committee was the only means of ascertaining the wishes of the holders of the securities with respect to the ultimate reorganization and liquidation, and that the organization of such com-

mittee was the accepted and recognized method adopted to the end desired; that the equity of redemption formerly held by the Mozart Building corporation had been acquired by the committee, the title being held for it by one Olsen; that there were holders of junior incumbrances with whom the committee had reached an agreement; that the committee had formulated a plan of reorganization and in furtherance of it planned to purchase the property at the foreclosure sale and to cause an immediate redemption to be made and the property to be conveyed to a corporation organized under the laws of the State of Illinois, to cause this corporation to borrow funds as might be necessary to pay or provide for the payment of the taxes, court costs, fees, etc., in connection with the reorganization of the property, and to cause the corporation to distribute all of its stock to the committee, to be redistributed to the holders of certificates of deposit for the first mortgage bonds and a small percentage thereof to the holders of the junior incumbrances; that under this plan of reorganization, bonds not deposited with the committee would receive their pro rata distribution of the proceeds of the sale held pursuant to the decree, said distribution being paid in cash; that following the sale and redemption therefrom the receiver would immediately be discharged.

The supplemental decree further finds that this plan of reorganization had been formulated and the committee was prepared to put the same in operation as soon as the terms and provisions of the Federal Securities Act, in force May 27, 1933, had been clarified and the necessary forms provided by the Federal Trade Commission, pursuant to the terms of that act; that the bond owners' committee contends that the Federal Securities Act passed May 27, 1933, contained many provisions affecting the status of bondholders and bondholders' committees, so that it is practically impossible at the present time and until the act has

been clarified to proceed; that for that reason the committee is in no position to carry out its reorganization plans unless the Federal Securities Act should be construed and proper forms adopted; that the deposit agreement vests the full legal and equitable title of the bonds so deposited in the committee and obligates the depositors of the bonds to pay their pro rata share of the expenses and charges incurred by the committee in connection with the services it renders; that pursuant to the agreement the committee will attempt to acquire for the depositing bondholders the title to the property; that the committee is willing that the holders of all bonds secured by the trust deed participate in such property by depositing their bonds with the committee; that the committee is desirous of acquiring the property at the foreclosure sale for the benefit of the depositing bondholders at the lowest price that it may deem advisable under the circumstances.

The decree finds that the balance of taxes due on the premises amounts to $21,113.79; that in addition thereto the taxes for the years 1932 and 1933 have accrued but are not yet payable; that these taxes will approximate $9,000 for each year; that the gross receipts derived from the property for the calendar year 1933 were $71,183.04; that for the same period disbursements amounted to $72,247.65. An itemized statement as to disbursements appears, showing that payments on account of taxes had been made in the sum of $2,410.28 for 1928, $2,000 for 1930, and $5,258.99 for 1931, and $434.77 for insurance premiums, $1,800 for furniture replacements, $3,598.70 receiver's fees, and $3,300 fees to attorney for receiver, the balance of $53,444.91 being for operating expenses, so-called.

The decree finds that the present fair market value of the real estate exclusive of furniture and equipment, is $200,000; that the maker of the bonds is insolvent, and that a personal deficiency decree against him would be of no avail. It was therefore ordered

and adjudged that the upset price of the premises should be fixed and determined at the sum of $200,000; that the master in chancery should be directed to proceed with the sale of the premises according to law as provided in the original decree; that in the event of there being no bona fide bidder for cash in the sum of $200,000, the Chicago Title & Trust Co. was directed to bid in its representative capacity for the use and benefit of all the bondholders the full amount of the debt due the trustee, less $25,000, being an amount sufficient to cover the income of the premises during the statutory period of redemption, and that the master in such case should strike off and sell the same to such trustee and issue its certificate of sale to the Chicago Title & Trust Co. and receipt for the full purchase price in lieu of cash, with or without the production of the bonds secured by the trust deed; that the Chicago Title & Trust Co. might take such receipt as purchaser at such sale for the use and benefit of all bondholders, and that upon confirmation of the master's sale and within 30 days from the master's deed the trustee should issue beneficial trust certificates to each bond owner for the proportionate amount of the bonds and coupons held by such bond owners as the court might direct and approve; that the interest of the bond owners should be only in the beneficial certificates and considered and treated as personalty and that no lien or judgment against the bond owners should attach to the realty, except to the interest of the beneficiaries in the proceeds to be realized from the beneficial certificates, and that the title should remain vested in the trustee free and clear from any and all liens and incumbrances against any of the beneficiaries of the trust; that such sale should operate as a complete satisfaction and cancellation of all bonds secured by the trust deed, the bondholders taking only the beneficial trust certificates in lieu of the bonds; that the funds then in possession of the receiver, or any sum or funds

to be collected thereafter, should be turned over to the trustee to apply in partial payment of the amount due under the decree in the order or priority as set forth in the decree, and that the trustee was authorized to pay out of the income of the premises any and all prior liens or taxes including the costs and expenses as found and determined by the decree and subsequent to the expiration of the period of redemption; that if there should be no redemption, the possession of the premises should be turned over to the trustee for the management and operation thereof under the jurisdiction and supervision of the court until its determination either by the acts of the parties or by the further order of the court; that in the event the trustee should acquire the property at the sale and no redemption should be made and the possession of the premises should be taken by the trustee, the trustee should be and was fully authorized and empowered to manage, operate, improve and protect the property; to lease and demise the same, or any part thereof with the improvements thereon for any term of years, or lesser terms; to contract to make leases; to grant options to lease and to renew leases; to contract respecting the manner of fixing the amount of present or future rentals; that the trustee should have full power to grant options to purchase, to contract to sell and to sell the trust property, or any part thereof, under the authority and direction of the court, and further, subject to the direction of the court, to mortgage, pledge or otherwise incumber the trust property, or any part thereof, with the improvements thereon; to pay out and distribute the proceeds of any sale, mortgage or incumbrance on the property under the authority and direction of the court; to rent, lease, purchase or otherwise acquire personal property required for the operation and management of the real estate; to insure the property, to pay the costs thereof; to pay taxes, special assessments, both accrued and thereafter to accrue;

to pay any and all amounts found to be due to the trustee pursuant to the decree of foreclosure; to reimburse itself for any funds advanced in connection with the management or operation of the property and to pay itself a reasonable charge or fee for services performed in connection with the operation and management of the property; to employ attorneys, secretaries, accountants, superintendents, engineers, etc., and that no person dealing with the trustee with reference to the property should be required to see to the application of the rents, purchase money or moneys borrowed or advanced on the premises or property, or be obliged to see that the terms of the trust had been complied with, or be obliged to inquire into the necessity or expediency of any act of the trustee, or to inquire into the power and authority of the trustee.

It was further ordered that no sale of the premises should be had nor mortgage placed thereon without the consent and approval of the court upon due notice, etc.; that the court retained jurisdiction of the subject matter of the trust and of the parties for the purpose of enforcing the terms and provisions of the decree, for passing upon the account of the trustee and of the rights of the parties involved until such time as the trust property would be disposed of in such manner as the court might direct and approve. The court also retained jurisdiction for the purpose of considering and approving any reorganization plan to be submitted to it by the parties in interest and to pass upon the fees and expenses in connection with such reorganization plan and with the management of the trust estate.

From this decree the Chicago Title & Trust Co. as trustee, the bondholders' committee and J. A. Paasche, holder of certain undeposited bonds have perfected this joint and several appeal.

It is apparent that in entering this decree the procedure was intended by the chancellor to comply with the rules stated in *Straus v. Chicago Title & Trust Co.,*

273 Ill. App. 63. In behalf of the appellants it is urged, in the first place, that the decree entered in 1931 was a final decree; that the supplemental decree thereafter entered undertook to materially vary the terms and provisions thereof, and that the court was wholly without jurisdiction to do this after the term had expired at which the decree was entered. We are not impressed with this contention. The original decree reserved jurisdiction for certain purposes, and the supplemental decree was within the reservations thus provided. It is the general rule, as appears from the cases cited in the briefs, that the limitation of control of the court to the term at which the decree was rendered does not apply to the provisions inserted for the purpose of carrying the decree into effect. *Sterling Nat. Bank v. Martin,* 213 Ill. App. 566. To the same effect are *Mariner v. Ingraham,* 230 Ill. 130, and *Totten v. Totten,* 299 Ill. 43.

It is contended, in the second place, that since the trust deed in this case contains no provision authorizing the trustee to bid for and acquire the property on behalf of all the bondholders, it was improper for the court to enter an order directing it so to do. There is a conflict in authority on this point as stated in the opinion filed in *Straus v. Chicago Title & Trust Co.,* 273 Ill. App. 63, where this court said: "We are in accord with the reasoning of the courts of Connecticett, Pennsylvania, Kansas and Iowa, rather than with the Federal Court and the Supreme Court of Michigan." It is unnecessary to again review the authorities mentioned in that opinion further than to say that we adhere to the views there stated. It is, however, to be noted that *Detroit Trust Co. v. Stormfeltz-Loveley Co.,* 257 Mich. 655, was a case which involved the construction of a statute peculiar to the State of Michigan. It is also to be noted that since the filing of the opinion in the *Straus* case the Supreme Court of Nebraska in *Kitchen Bros. Hotel Co. v.*

*Omaha Safe Deposit Co.,* 126 Neb. 744, after review of all the authorities, has cited with approval the doctrine as stated in the *Straus* case.

Appellants here also contend that the court was without jurisdiction to enter the decree complained of because all of the bondholders were not made parties to the proceeding, and a number of cases such as *Nolan v. Barnes,* 268 Ill. 515; *Sellers v. Rike,* 272 Ill. 303; *Riley v. Webb,* 272 Ill. 537; *Peoples Bank & Trust Co. of Rockford v. Gregory,* 347 Ill. 397, are cited to that point. Those proceedings, however, were entirely different in their nature from this one. Here, the trustee asserts in its bill that it is the sole representative of the bondholders, and, indeed, the right to bring such suit is by the trust deed expressly lodged in the trustee to the exclusion of the bondholders. Moreover, every class of parties disclosed by the proceedings is represented in this appeal—the trustee, the committee, the depositors and the non-depositors. No one who asked to be heard was denied a hearing and each and every class is represented. The contention cannot be sustained.

It is further contended that even assuming complainant trustee has the power to purchase the mortgage property in behalf of the bondholders, the result of such purchase would be to impair their interest in the property, because the trustee would be unable to deliver a merchantable title. This contention is made upon the theory that if the property came into possession of the trustee it would be subject to all the burdens of a tenancy in common and, further, subject not only to dower rights of a surviving husband and wife but also to the lien of judgment creditors. Here, again, the contention was made and disallowed in the *Straus* case. We there said:

"From what we have said, we think it appears that in case the property is purchased by the trustee for the benefit of the bondholders, he will have active duties

to perform under the direction of the chancellor, and can convey good title to the property when the court thinks this should be done; and that the bondholders' only interest is to receive their share of the proceeds of such sale.''

Indeed, plaintiffs concede in their argument that where a trustee has active duties to perform the statute of uses will not be effective. They insist, however, that in this case the trustee would be without active duties to perform. We do not so read the decree and think *Moll v. Gardner,* 214 Ill. 248; *Emery v. Emery,* 325 Ill. 212, are conclusive against plaintiffs' contention.

Plaintiffs contend in the next place that even assuming the trustee has implied power to purchase the property for the bondholders the exercise of that power is a matter for the discretion of the trustee and that the chancellor is without power or right to interfere with that discretion. We held to the contrary in the *Straus* case, citing *Corkery v. Dorsey,* 223 Mass. 97. Plaintiffs also contend that assuming the authority and power, it should not have been exercised by the chancellor because the bondholders' committee on reorganization is ready to make a bid at the sale. The findings of the decree make it impossible for us to sustain this contention. Whatever the qualifications of bondholders' committees generally may be and whatever merit this particular committee may have, it would appear that up to this time little has been accomplished other than obtaining from the holders of the bonds the possession thereof and placing the bonds with the committee. The agreement signed gives the committee 21 years in which to work out a plan, and the answer of the committee is to the effect in substance that it does not know what it wishes to do until a federal statute is construed. We cannot hold that it was any abuse of discretion for the chancellor to refuse to exercise pa-

tience and forbearance further under such circumstances. At the speed at which the committee moved the heirs and legatees of the bondholders might possibly receive some benefit at some future time, but there were no reasonable grounds for the belief that reasonably immediate benefits were attainable through the committee. It was well within the discretion of the chancellor to provide a more efficient remedy under all the circumstances.

It is also urged that the supplemental decree fails to make proper provision for the payment of court costs, charges, prior liens, etc. The provisions of the decree already recited at length, we think show the contrary to be the fact. We have not undertaken to discuss the points and authorities cited by plaintiffs. Substantially every case upon which they rely worthy of discussion was analyzed and considered in the *Straus* case. As already said, we realize there is a conflict in the cases, but we adhere to the decision in the *Straus* case, and the facts of this case bring it within the rules there announced. In conformity with that opinion, and for the reasons stated therein, the decree appealed from is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.