Chicago Title and Trust Company, Appellant, v. Max Robin et al., Defendants.
Walter H. Hildebrand, Appellee, v. Thomas R. Ferguson et al., Appellants.

Gen. No. 37,632.

Opinion filed December 18, 1934.

MILLER, GORHAM, WALES & ADAMS, of Chicago, for appellants Thomas R. Ferguson et al.

BERGER & NEWMARK, of Chicago, for appellant Chicago Title & Trust Co.

WARREN B. BUCKLEY and JAMES A. VELDE, both of Chicago, for appellant Anna Rychecky.

CONCANNON & DILLON, of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is another case in which the chancellor has applied to the situation before him the rules announced in *Straus v. Chicago Title & Trust Co.*, 273 Ill. App.

63, followed in the case of *Chicago Title & Trust Co. v. Bamburg,* 278 Ill. App. 1.

On April 1, 1931, the Chicago Title & Trust Co. as trustee filed its bill to foreclose a trust deed made April 1, 1926, by Max Robin and Belle Robin, his wife, to secure the payment of 77 bonds for the aggregate amount of $28,500. On March 30, 1932, a decree of foreclosure and sale was entered. It found the sum of $27,507.43 to be due subject to a lien for costs, etc., to the amount of $2,258.93. The property was advertised, and on March 20, 1934, the master filed his report showing the sale of the premises to Carl Devoe for $5,000. The report of sale states that if the bid is confirmed by the court, payment will be made in cash to the amount of $3,254.28 and the balance in bonds and coupons; that the cash will be retained and distributed as follows: $125 for trustees' fees, $2,000 to William B. Berger for complainant's solicitors' fees, $515.90 for master's fees and expenses, and $613.38 to complainant as trustee for the use and benefit of the owners and holders of non-deposited bonds and interest coupons.

On March 21, 1934, Walter H. Hildebrand filed his intervening petition in which he recited that he was the owner of bonds Nos. 22 and 32 and requested the institution of foreclosure proceedings with an offer to indemnity; that on May 28, 1931, a bondholders' committee (naming the individuals composing it) solicited bondholders to deposit bonds with it under an agreement of that date (a copy of which is attached to the petition); that petitioner is informed that bonds to the amount of $18,500 were deposited with this committee prior to the entry of the decree of foreclosure on March 30, 1932; that Devoe purchased the real estate on behalf of the bondholders' committee.

Setting up other facts as hereafter recited in the supplementary decree, the petition prayed that the sale to Devoe might be disaffirmed, the master directed to

readvertise, that the court determine the full fair value of the real estate, construe the trust deed and the powers of the trustee thereunder, modify and enlarge the provisions of the trust deed and direct the trustee to bid at the resale for the bondholders the full, fair value of the real estate unless there was a bona fide bid for cash; that the master might issue a certificate of sale to the trustee and in such case the court should instruct the trustee as to the management of the estate.

The petition also prayed for general relief. All the parties to the action, the members of the bondholders' committee, non-depositing bondholders, and the trustee were made defendants to the petition. The trustee, Anna Rychecky (a non-depositing bondholder), the bondholders' committee and Carl Devoe answered denying that petitioner was entitled to the relief for which he prayed.

The evidence was taken by the chancellor upon the issues thus formed, and on May 21, 1934, the decree appealed from was entered. It recites the proceedings to obtain jurisdiction of the parties in interest, including unknown owners, etc., and prior proceedings including the sale by the master and the deposit of bonds with the bondholders' committee under agreement dated May 28, 1931. It finds that no part of the amount found due under the decree of March 30, 1932, has been paid, the advertisement of the premises by the master and the sale to Devoe, the organization of the bondholders' committee and the members of it; that Devoe acted for the committee; finds the improvements on the premises and that the fair value of the same at the time of the execution of the trust deed was not less than $35,000; that the full, fair value of the same at the present time is not less than $19,000; that unpaid taxes amount to approximately $2,500, and that the fair value of the real estate at the present time, subject to the tax liens, is not less than $15,000; that the bid of Devoe is grossly inadequate and does not repre-

sent one-third of the real value of the real estate; that no one other than the Robins are personally liable and that they have no apparent funds or other property with which to pay any deficiency decree that might be rendered; that if the sale to Carl Devoe is approved, the non-depositing bondholders will receive less than 10 cents on the dollar; (as a matter of fact less than 9 cents); that the financial depression has practically destroyed sales of real estate in Chicago other than by persons forced to sell at a sacrifice; that there practically have been no purchases at foreclosure sales other than by owners of the mortgage, or purchases made on behalf of bondholders' committees; that in practically every case where the bondholders' committee has purchased, the property was bid in at only a nominal part of its real value and the non-depositing bondholders received only a few cents on the dollar; that owing to those conditions it cannot be reasonably expected that upon a resale the premises will bring anything near the real value; that the owners and holders of the bonds will suffer serious damage and injury unless the court fixes and determines the full, fair value of the real estate and unless the Chicago Title & Trust Co. as trustee is instructed and directed by the court to bid at such sale for the use and benefit of all owners and holders an amount equal to the present full, fair value of the real estate; that Hildebrand and Anna Rychecky are respectively owners and holders of certain of these bonds, none of which has been deposited with the committee; that the committee owns and holds $18,500 of the bonds, the remainder being held by divers persons unknown; that Anna Rychecky and the committee were made respondents to the end that they might represent persons who were similarly situated and in order that such persons be bound and concluded by the decree; that the trust deed provides that in case of default the trustee may, *inter alia,* proceed to protect and enforce the rights of the trustee and the bondholders by appropriate proceedings at

law or in equity, whether for the specific performance of any covenant, condition or agreement, or in aid of the execution of any power therein granted, or for the enforcement of such other appropriate legal or equitable remedy as may in the opinion of the counsel be most effectual to protect and enforce the rights aforesaid; that upon default the trust became active; that the prevailing financial, social and chaotic conditions present problems in the administration of the trust which would not have been foreseen by the creators of the trust and for which adequate provision was not made; that the intervening petitioner and the trustee are entitled to the orders and directions of the court with respect to the interpretation and construction of the trust deed, the determination of the rights, powers, duties and obligations of the trustee thereunder, and for the instructions and directions of the court with respect to the administration of the trust and the protection afforded thereby.

The decree further finds that the master's sale should be disaffirmed and disapproved by the court, the certificate of sale issued by the master be canceled and annulled, and the premises resold by the master as ordered by the decree; that the Chicago Title & Trust Co. as trustee is vested with power and authority to see that the real estate conveyed is not sacrificed and lost to the owners and holders of the bonds and coupons secured thereby and that upon such resale the trustee is vested with power and authority in the event no bona fide bid of $15,000 is made at the sale for the benefit of the owners and holders of the bonds, to bid an amount equal to the present full, fair value of the real estate, in order that the purposes of the trust may be effectuated and the owners and holders of the outstanding bonds and interest coupons may have the full benefit of the security given.

It is therefore ordered and adjudged that the sale be set aside and the certificate of sale canceled and annulled; that there should be a resale at which the

trustee should bid in the premises in the event there was no bona fide cash bid for the price fixed; that in case of such purchase by the trustee the trustee is authorized to use the indebtedness found due or so much as is necessary to make payment of the bid; that a certificate of sale in such case should be issued to the trustee and in case of failure to redeem a deed should issue to the holder of the certificate; that the Chicago Title & Trust Co. is declared to be the trustee of an active trust in the execution of the powers and directions therein enumerated, and that if the Trust Co. shall be the owner and holder of the certificate of sale at the expiration of the period of redemption, it shall be entitled to the premises, and is ordered and directed to hold, manage, operate, lease, sell, convey and otherwise deal with the real estate as such trustee for the use and benefit of the owners and holders of the outstanding and unpaid bonds and interest coupons, subject to the further order and direction of the court.

It was further ordered that the right, title and interest of the owners and holders of the bonds and interest coupons be declared to be personal property and not real estate, and that the only right, title and interest of the bondholders to any of the assets of the trust should be to receive their proportionate share of the income, proceeds and avails of the real estate and the other assets of the trust; that in case the Trust Co. should become the purchaser at the sale it should have a first and prior lien upon the assets of the trust and the rents, income, proceeds and avails thereof in the sum of $2,258.95, as found due by the decree of March 30, 1932, and in addition thereto for the amount of fees of the master as fixed by the decree and additional fees which might be allowed to the master, including his commissions and charges on such sale and all costs of the proceeding advanced and paid by the trustee and for its reasonable compensation to be fixed by the court for administering the trust, and that it

might pledge the master's certificate of sale or any assets of the trust upon such terms and conditions as the court might thereafter authorize and direct for the purpose of raising funds with which to meet these obligations; that the court, in addition to other reservations, retained jurisdiction of this proceeding for the purpose of thereafter fixing from time to time reasonable compensation to be paid the trustee for administering the trust and for the purpose of thereafter fixing and determining the terms and conditions upon which the trustee might pledge the assets of the trust for the purposes aforesaid; that the court reserved jurisdiction of this cause and of all the parties, for the purpose of providing for the disposition of the rents, issues and profits thereafter to accrue from the premises and any proceeds from the sale thereof; for the purpose of entering a personal decree for deficiency, if any, against Max and Belle Robin and to provide for execution thereof; for the purpose of directing, advising and instructing the Trust Co. in the execution and management of the trust and with respect to any question arising in connection therewith; to determine all controversies between any persons claiming title to ownership of or interest in, any unpaid bonds or interest coupons issued under and secured by the trust deed, and to determine the manner in which the interest of the *cestuis que trust* in the trust shall be evidenced and the manner in which the interest may be assigned.

From this supplementary decree the members of the bondholders' committee, Carl Devoe and the Chicago Title & Trust Co. have perfected their appeal, while Anna Rychecky prosecutes a separate appeal in her own behalf. She contends that the decree improperly directed the trustee to purchase at the resale and to manage the property for the benefit of the bondholders, because of the absence of necessary parties to the proceeding, because the terms of the trust deed did not warrant an implication of power in the trustee so to

do, and because the provisions in the decree that after the sale the trust will be active and the interests of the bondholders in personal property are contrary to established principles of law. She insists that that portion of the decree which disapproved the sale to Devoe and directed a resale should not be disturbed; that it was within the discretion of the chancellor to fix an upset price and that he did not abuse his discretion in doing so. She contends generally that a court of equity has power in its discretion to establish an upset price before a judicial sale.

In behalf of the trustee, the bondholders' committee and Devoe, it is contended that the decree should be reversed because it impairs the obligations of the contract entered into by the owners of the premises and the holders of the bonds; that the depression does not warrant changing the provisions of the contract of the parties as expressed in the trust deed; that, at any rate, the court erred in directing the trustee to bid because a reasonable reorganization was otherwise available, because no method of obtaining funds to satisfy the prior lien was provided, and because (as contended by Anna Rychecky) all the bondholders were not before the court. They also contend that the court's order incumbers the title to the real estate; that the court was not warranted in interfering with the discretion of the receiver as to whether it should bid and that the amount of the minimum price to be accepted at a resale was erroneously arrived at.

Practically all these points have been passed on by this court, contrary to the contentions of appellants, in *Straus v. Chicago Title & Trust Co.,* 273 Ill. App. 63, and in *Chicago Title & Trust Co. v. Bamburg,* 278 Ill. App. 1. In the last named case the contention was made, citing the same authorities here relied on, that the court was without jurisdiction to enter the decree because all the bondholders were not made parties to the proceeding. We said:

"Those proceedings, however, were entirely different in their nature from this one. Here, the trustee asserts in its bill that it is the sole representative of the bondholders, and, indeed, the right to bring such suit is by the trust deed expressly lodged in the trustee to the exclusion of the bondholders. Moreover, every class of parties disclosed by the proceedings is represented in this appeal—the trustee, the committee, the depositors and the non-depositors. No one who asked to be heard was denied a hearing and each and every class is represented." In addition to what was there said, it will be noticed that here each and all of the bondholders were made parties either expressly by name or under the designation of "unknown owners." The contention was also made in those cases that since the trust deed contained no provision expressly authorizing the trustee to bid for and acquire the property in behalf of all the bondholders, it was improper for the court to enter an order directing it to do so, and such direction would amount to the impairment of the obligations of the contract between the parties. With reference to that point we said in the *Bamburg* case:

"There is a conflict in authority on this point as stated in the opinion filed in *Straus v. Chicago Title & Trust Co.*, 273 Ill. App. 63, where this court said: 'We are in accord with the reasoning of the courts of Connecticut, Pennsylvania, Kansas and Iowa, rather than with the Federal Court and the Supreme Court of Michigan.' It is unnecessary to again review the authorities mentioned in that opinion further than to say that we adhere to the views there stated. It is, however, to be noted that *Detroit Trust Co. v. Stormfeltz-Loveley Co.*, 258 Mich. 655, was a case which involved the construction of a statute peculiar to the State of Michigan. It is also to be noted that since the filing of the opinion in the *Straus* case the Supreme Court of Nebraska in *Kitchen Bros. Hotel Co. v. Omaha Safe Deposit Co.*, 126 Neb. 744, after review of

all the authorities, has cited with approval the doctrine as stated in the *Straus* case.''

The contention was there also made that the decree of the court would incumber the title to the real estate and the trustee would be unable to deliver a merchantable title. On that point in the *Bamburg* case we said:

''This contention is made upon the theory that if the property came into possession of the trustee it would be subject to all the burdens of a tenancy in common and, further, subject not only to dower rights of a surviving husband and wife but also to the lien of judgment creditors. Here, again, the contention was made and disallowed in the *Straus* case. We there said:

'' 'From what we have said, we think it appears that in case the property is purchased by the trustee for the benefit of the bondholders, he will have active duties to perform under the direction of the chancellor, and can convey good title to the property when the court thinks this should be done; and that the bondholders' only interest is to receive their share of the proceeds of such sale.'

''Indeed, plaintiffs concede in their argument that where a trustee has active duties to perform the statute of uses will not be effective. They insist, however, that in this case the trustee would be without active duties to perform. We do not so read the decree and think *Moll v. Gardner*, 214 Ill. 248; *Emery v. Emery*, 325 Ill. 212, are conclusive against plaintiffs' contention.''

The contention was also made in those cases that the direction of the trustee by the court to bid against its own inclination and judgment was an abuse of discretion on the part of the chancellor. We held to the contrary in the *Straus* case on the authority of *Corkery v. Dorsey*, 223 Mass. 97. The contention was also made in the *Bamburg* case, as here, that the court erred in directing the trustee to bid because a bondholders' committee had prepared a fair reorganization plan

which was available. Whatever of merit or demerit there may be in the intentions expressed by the bond-holders' committee, it is apparent that so far as the non-depositing bondholders are concerned, the plan means practically that they will be deprived of their property. The deposit agreement which appears in the record is attached to the intervening petition and made a part of it. We shall not undertake to discuss its provisions in detail further than to say that the bondholders who deposited thereunder seem in name at least to have put their property entirely outside their own control and that the proceeds which they will receive therefrom both as to time and amount will be according to the pleasure of the committee. The plan adopted by the court has the merit of placing the property of all the parties interested under the juris-diction of the chancellor and within the protection of his conscience.

Here, as in the *Straus* and *Bamburg* cases, it is urged that no proper provision was made for the pay-ment of court costs, prior liens, etc. We think the provisions of the decree sufficient in that regard.

The duty of the chancellor under circumstances such as here appear is aptly expressed in *Investment Registry v. Chicago & M. E. R. Co.*, 212 Fed. 594, where the court said:

"Most commonly the controversy over the sale arises when there are nonassenting bondholders. When such a controversy is on, the chancellor in our opinion not only has the right but owes the duty of being vigilant to see, on the one hand, that a dissenter be not permitted to create a maneuvering value in his bonds by opposing confirmation, and, on the other, that the majority does not use its power, unique in sales of this class, to oppress a helpless minority. . . .

"Courts of equity should be deemed no less power-ful today than when the first chancellor looked to his conscience for guidance, to make fair dealing between

man and man the test. And from what other source came, or could come, the recognized practice, in sales of this class, of the court's ascertaining in advance of sale the minimum value of the property and thereupon fixing a minimum selling price?''

In conformity with this view of the power and duty of a chancellor the rules announced in the *Straus* case were declared by this court, and the power of a chancellor in his discretion to direct a bid by the trustee would seem to be a necessary complement to the rule (well established) that a chancellor may in his discretion fix an upset price which will guarantee the fairness of a sale. That rule began with no less an authority than Lord Eldon in *Jervoise v. Clarke,* Jac. & W. 388, 37 English Reports 423 (1820). It has been followed in numerous cases in many jurisdictions. *Provident Life & Trust Co. v. Camden & T. Ry. Co.,* 177 Fed. 854; *Ex parte Equitable Trust Co.,* 231 Fed. 571; *Guaranty Trust Co. v. Chicago, M. & St. P. Ry. Co.,* 15 F. (2d) 434; *Blair v. St. Louis, H. & K. R. Co.,* 25 Fed. 233; *Palmer v. Bankers' Trust Co.,* 12 F. (2d) 747; *Clinton Trust Co. v. 142–44 Joralemon St. Corp.,* 237 App. Div. 789, 263 N. Y. S. 359; *United Building & Loan Ass'n v. Neuman,* 113 N. J. Eq. 244, 166 Atl. 537; *Investment Registry v. Chicago & M. E. R. Co.,* 212 Fed. 594.

We hold the relief granted in this case was within the discretion of the chancellor and that his discretion was not abused. The decree is therefore affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.