Chicago Title and Trust Company, Complainant. Appeal of Helen M. Neuffer, Intervening Petitioner, Appellant, v. Chicago Trust Company et al., Defendants. William H. Hess, Appellee.

Gen. No. 38,564.

248

Opinion filed March 23, 1936. Rehearing denied April 6, 1936.

ERNEST A. EKLUND, of Chicago, for appellant; JOHN N. THORNBURN, of Chicago, of counsel.

RANDOLPH BOHRER, of Chicago, for appellee; NORMAN H. ARONS and MILTON J. FINK, both of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The Chicago Title & Trust Co., a corporation, as trustee, filed its bill to foreclose a trust deed on certain premises. Afterward a decree of foreclosure was entered, the property sold and purchased by Helen M. Neuffer. A receiver had been appointed; he filed his final report; Helen M. Neuffer filed an intervening petition and objected. The Chicago Title & Trust Co., complainant, also filed objections to the receiver's final report and the matter was referred to a master in chancery. Evidence was introduced before the master; he made up his report, to which Neuffer, the Chicago Title & Trust Co. and the receiver each filed separate objections. They were overruled and after the filing of the report objections were ordered to stand as

exceptions. August 20, 1935, an order or decree was entered sustaining the master except as to a few items; the decree found that the receiver had incurred a deficit of $3,090.64; he was given a lien on the premises and rents for that amount, and the court ordered that another receiver be appointed to manage the premises and collect the rents until the deficit was paid. Helen M. Neuffer, the intervening petitioner who objected to the receiver's reports, as stated, alone prosecutes this appeal.

February 4, 1932, the receiver filed his first current report and account covering the period from the date of his appointment, April 17, 1931, to December 31, 1931, and on February 20, 1933, he filed his second current report and account covering the period from January 1, 1932, to December 31, 1932. October 12, 1933, the master issued his deed to Helen M. Neuffer, who had purchased the property at the foreclosure sale, and January 8, 1934, the receiver filed his final report and account, covering the period from January 1, 1933, to October 31, 1933. The receiver's first and second current reports and accounts were approved. After the filing of the final report and account Helen M. Neuffer filed her objections to the final report; objections were also filed by the complainant, Chicago Title & Trust Co., trustee, and on February 21, 1934, an order was entered which recites that the final account of the receiver came on for hearing and "upon the objections of Helen M. Neuffer and the Stover Co., Inc., thereto," it was ordered that the receiver's report and the objections thereto of Neuffer and the Stover Co. be referred to Master Pollack and that "all costs of the above reference and the fees of the said Master in Chancery be, and the same are hereby assessed against WILLIAM H. HESS." And it was further ordered that Hess file a bond in the sum of $1,000 to secure the payment of the costs of reference. After the matter was partially heard before the master, the

receiver by leave of court filed an amendment to his final account and report.

The record discloses there were 47 one- and two-room apartments in the building and that the receiver had employed Catherine Baker to take care of the details of the work in renting the apartments, collecting the rents and making disbursements under his direction. She had been in charge of the building prior to the appointment of the present receiver, Hess, and seems to have been a woman of considerable experience who understood how to operate such a building. The evidence further shows that there was a great deal of shifting of tenants in the apartments; some of them did not pay their rent and there were a number of vacancies.

The master found that upon the appointment of Hess as receiver he ''retained the services of . . . Catherine Baker who had been managing the property . . . for the North Town State Bank, while it was acting as receiver, and prior thereto managed said building for . . . J. W. Dowd, the former owner'' of the property; that ''she was thoroughly familiar with practically every detail of management. Dowd testified that while he was the owner of the building he intrusted Miss Baker with all rent collections and found her entirely trustworthy.''

The master further found that one of the objections to the receiver's report was that he should be charged with $1,704.15, being the amount of delinquent and unpaid rents from January 1st to September 21st, 1933. A number of former tenants were called and one of them testified that he had paid a balance of $85 claimed by the receiver, and another that she had paid her rent in full where the receiver claimed $50, and the master recommended that the sum of these two items, aggregating $135, be charged to the receiver.

Other objections made by the intervenor, Neuffer, are: (1) that the receiver in his final report showed

an income received of $9,263.55, and during the hearing before the master he filed an amendment to his final report and account showing that he had received but $7,180.05; (2) that the receiver was given credit for $1,675.72 for money expended as shown by canceled checks which were not supported by invoices, and that $1,260.20 had been credited to the receiver for cash expended, for which there were no receipted bills and which was only supported by the affidavit of Catherine Baker; that the receiver should not have been allowed $348 for second-hand carpet purchased, and that the $800 which had theretofore been allowed the receiver on account of his services should be charged against him because he had not properly handled the building.

November 29, 1933, Catherine Baker made an affidavit that she had entire charge of the books and records of the building, collected the money, made necessary expenditures and deposited the balance in the bank to the receiver's account. Attached to the affidavit was what purported to be a detailed statement showing the amount of uncollected rents from several tenants who occupied the premises. This affidavit states it was made to be filed by the receiver in support of his final accounting in connection with the proposed examination by a firm of certified public accountants which was contemplated. Catherine Baker was called as a witness by the objector Neuffer, and also by the receiver. She testified as to the method used by her in managing the building, in making rent collections, keeping her records and depositing money in the bank. A certified public accountant testified that he had audited the records and submitted his written audit, which was introduced before the master and is before us; that he was furnished with the report of occupancy of the building, canceled checks, bank statements, receipts, court orders, invoices and schedules, and gave a summary of what the audit showed. The audit con-

sists of several typewritten pages of figures showing numerous items.

From a careful consideration of all the evidence in the record, and taking into consideration the fact that witnesses appeared and testified before the master, who made up his report, which was substantially approved by the chancellor, we are of opinion we would not be warranted in disturbing the order appealed from. The evidence shows that it was necessary to make cash disbursements from time to time for which no vouchers or receipts were obtained, and we think that in a great many instances it would have been unreasonable to expect vouchers and receipts. Miss Baker, who made these disbursements, was before the master and testified. The matter was apparently fully gone into, and we are unable to say that the master and the chancellor were wrong. We think the result was as nearly accurate as could be expected considering the nature of the building and the character of the tenants, together with the fact that the time in question was one of great financial depression, of which we take judicial notice. *Straus v. Chicago Title & Trust Co.,* 273 Ill. App. 63; *Atchison, T. & S. F. Ry. Co. v. United States,* 284 U. S. 248. We think there was no error in receiving the testimony of the certified public accountant as to the result shown by his audit. The written audit was before the master, and, as we said in *Hochschild v. Goddard Tool Co.,* 233 Ill. App. 56 (p. 61): "Where the original evidence in a transaction consists of numerous documents, books, papers or records which cannot be conveniently examined in court and the fact to be proved is the general result of an examination of such books, papers and records, any competent person who has examined the documents may give evidence as to such result, provided the result is capable of being ascertained by calculation."

Nor do we think there was any error in the chancellor taxing the costs of the reference against the inter-

venor, Neuffer, although the order of reference provided that the costs of the reference should be taxed against the receiver, for the reason that upon the hearing of the matter the evidence showed that the objections to the master's report were not well founded. We are also of opinion that we would not be warranted in disturbing the order appealed from wherein the court awarded the receiver, Hess, $800 which had theretofore been allowed to him, and finding that he was entitled to no further fees because the court, on the whole, found the receiver was entitled to this sum for the services he had rendered. And we think the evidence sustains the finding and judgment of the chancellor in this respect.

The intervenor, Neuffer, contends the court erred in decreeing the amount due and unpaid, $3,090.64, to be a lien upon the premises and the rents thereof, for the reason that she was the purchaser of the premises at the master's sale under the foreclosure decree and was entitled to the property clear of all incumbrances. In support of this, counsel for the intervenor say: ''It is inequitable that under such circumstances the mere contract creditors of the Receiver should be given a lien prior to the innocent purchaser at the Master's sale.'' The difficulty with this contention is that the chancellor found in the decree appealed from that ''Helen M. Neuffer is the nominee of John C. Bowers and Edward M. Warner, as the Fidelity Bondholders' Protective Committee; that William H. Hess was appointed receiver at the instance of said Bondholders' Committee; that William H. Hess incurred, in the administration and preservation of the estate'' the several items mentioned in the decree, aggregating $3,090.64. From this decree it appears that the intervenor, Neuffer, was not an innocent purchaser of the premises at the master's sale, but on the contrary she bought in the property for the bondholders' committee. But counsel for the intervenor say that there is no evi-

dence in the record to sustain the finding of the decree appealed from, "that either the Bondholders' committee or the intervening petitioner secured the appointment of the receiver." We have not the complete record before us. The proceedings in the foreclosure suit only partially appear. We must therefore assume that the chancellor, who had the entire case before him, was warranted in finding, as was done in the decree (from which we have above quoted) that the expenditures were properly made by the receiver in the "administration and preservation" of the property. The intervenor not being an innocent purchaser, but having bid in the property for the benefit of the bondholders, it was proper to decree that the amount of unpaid bills incurred in the preservation of the property be a lien on the property. *Knickerbocker v. McKindley Coal Co.*, 172 Ill. 535.

The decree and order of the superior court of Cook county appealed from is affirmed.

*Affirmed.*

McSurely, P. J., and Matchett, J., concur.