EDWIN A. HILLS vs. MARY L. PUTNAM & others.

Suffolk.   March 27, 28, 1890. — June 30, 1890.

Present: FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Trust and Trustee — Bill for Instructions — Equity Practice and Pleading — Parties — Appropriation of Funds by Executor.*

A trustee under a will, who is also administrator of the estate of his *cestui que trust*, for whom absolute provision was made by the will as well as in trust, may bring a bill in equity for instructions as to whether certain property received by him from the executor should be held by him as trustee, or accounted for by him as administrator.

A bill in equity for instructions as to the disposition of an estate, of which full notice has been given, is not defective for want of parties defendant, if the numerous claimants thereof, representing every possible interest, are fully represented before the court by those having similar interests.

A will directed the payment to the testator's son, or to "his trustees, or as the law may require," of $8,000 owed him by the testator, and created a trust fund of the residue of the estate for the son's benefit.  The executor added to that sum $102.67, interest from the date of a sale of securities of the estate to pay legacies, and invested the $8,102.67 in an annuity policy payable to himself.  This policy was placed in an envelope bearing the son's name and an indorsement by the executor that he had made this disposition of the $8,102.67, as the son was insane, and, by the testator's request, no guardian for him had been appointed.  The executor duly delivered this policy to the trustee of the residue of the estate, who was the trustee of other property for the son, invested in a similar manner during the testator's lifetime, and at his request.  The policy was never referred to in either the executor's or trustee's probate accounts, except that the executor in his final account charged himself with $8,000 generally; and it was in the trustee's possession at his death, which preceded that of the executor.  The trustee acknowledged the receipt from the executor of about $2,000 in payment of "the residue" of the estate, and thereafter repeatedly rendered trust accounts upon the basis of such payment.  The trustee's successor, who after the son's death was also appointed the administrator of his estate, brought a bill in equity for instructions as to the disposition of the policy and its accumulations.  *Held,* that the declaration made by the executor's indorsement on the envelope was admissible in evidence as part of his action in buying the policy and delivering it to the trustee; and that a finding was warranted that the policy and accumulations had been appropriated to the payment of the sums owed by the testator to his son, and belonged to his estate.

A testator directed the trustees of the residue of his estate "to pay over any of the income, or of the principal if necessary, from time to time, for the education or other wants of" the testator's insane son, "or his issue, if he shall have any, as the trustees may think fit, any surplus income to fall into the trust fund; but it is my request and my will that from the income of said property, and from the principal if necessary, there shall be expended liberally from time to time

whatever may be necessary to add to his comfort, or contribute to the gratification of his wishes and tastes." *Held*, that the trustees might in their discretion support the son from the trust fund, although the son had other property applicable to his support.

BILL IN EQUITY, filed October 24, 1889, by Edwin A. Hills, who was the surviving trustee under the residuary clause of the will of Benjamin Gorham, and also the administrator of the estate of Benjamin L. Gorham, the testator's son, against the next of kin of Benjamin L. Gorham, and against Ellen H. Barnard, Rebecca G. Kettell, Rufus Parks, and others, residuary legatees under the will of Benjamin Gorham, and many others, who were interested under the wills of Benjamin Gorham and of William C. Gorham, another son of Benjamin, for instructions as to the disposition of funds in the plaintiff's hands. The case was heard by *Field*, J., who reserved it for the consideration of the full court. The facts appear in the opinion.

*F. C. Lowell*, for the plaintiff, read the papers in the case.

*G. Putnam & W. L. Putnam*, for the next of kin.

*J. C. Ropes*, for Barnard and others.

*C. P. Greenough*, (*C. P. Curtis, Jr.*, with him,) for Kettell and others.

*H. Wheeler*, (*F. W. Hurd* with him,) for Parks and others.

DEVENS, J. The object of the bill in the case at bar is not to ascertain the duty of a trustee or of an executor in the administration of property held by him as such, but to determine in what capacity the plaintiff holds it, and thus to decide to which of two claimants, or classes of claimants, the fund in his hands belongs. Both classes of claimants derive their title from, and claim under, the provisions of the will of Benjamin Gorham, the legacies made therein, and the proceedings which have taken place thereunder; each demands the same property, or a part of the same property, and the plaintiff is a mere stakeholder, having no interest in the disposition thereof. Such a bill is within the jurisdiction of a court of equity. *Stevens* v. *Warren*, 101 Mass. 564. *Putnam* v. *Collamore*, 109 Mass. 509.

All persons who have desired to appear and answer have stated their respective claims to the fund fully. These claimants are very numerous, and may be divided for convenience into two classes; namely, the next of kin of Benjamin L. Gorham

on the one hand, and on the other the residuary legatees and those having like interests under the wills of Benjamin Gorham and William C. Gorham. Besides the next of kin of Benjamin L. Gorham, about one hundred and thirty persons interested in the will of Benjamin Gorham, and thirty persons interested under the will of William C. Gorham, were made parties defendant. About ninety persons interested under the will of Benjamin Gorham, and twenty others interested under the will of William C. Gorham, all having interests similar to those who are made parties, are not made parties defendant. While all the individuals of these classes are not before us, full notice has been given by publication; both classes have been ably represented; and there is no reason to fear that all those interested have not had ample opportunity to come in and assert their rights, so that no objection exists on account of any deficiency of parties. The ruling of the single justice who heard the case, that no others need be made parties defendant, was correct. *Libby* v. *Norris*, 142 Mass. 246.

Benjamin Gorham died on September 27, 1855, and the first clause of his will, which was dated November 12, 1854, was as follows: "In the name of God, Amen. I, Benjamin Gorham, of Boston, Esq., do make and publish this my last will and testament. I order all my debts to be paid, and among them I direct that there should be paid to my son Benjamin Lowell Gorham, or his trustees, or as the law may require, eight thousand dollars for the balance of the property of his which from time to time has come to my hands from his Grandmother Lowell's estate, and his uncle William Cabot's, the said eight thousand dollars to be in full discharge of all such sums by me received, and all interest thereon, and the said eight thousand dollars is to be allowed (unless paid in my lifetime) notwithstanding that the payments I have made and continue to make on his account would reduce said balance greatly below that sum."

The will, after providing for various legacies and two annuities of four thousand dollars each, contained in the residuary clause the following provisions: "I give all the rest and residue of my property, real and personal, including the reversion of the two above mentioned annuity funds of four thousand dollars each, to my son Benjamin Lowell Gorham, in fee simple, to be holden,

however, in trust, by his cousin Francis C. Lowell and his successors, and I devise and bequeath the same accordingly, with the powers and upon the trusts following, viz. : to have the whole exclusive control and management of said property real and personal, to sell and convey in fee simple, exchange, invest, resell, and reinvest the same from time to time, as he or they shall think best, and to pay over any of the income, or of the principal if necessary, from time to time, for the education or other wants of said B. L. Gorham, or his issue, if he shall have any, as the trustees may think fit; any surplus income to fall into the trust fund; but it is my request and my will, that from the income of said property, and from the principal if necessary, there shall be expended liberally from time to time whatever may be necessary to add to his comfort, or contribute to the gratification of his wishes and tastes; upon the death of my son, the trustees are to pay and transfer to his issue, if he shall leave any, all the trust fund real and personal estate in fee simple, discharged from all trusts. I give to the said Francis C. Lowell power to appoint any one or more, to act conjointly with himself or in his stead in said trust during his life, or by will to succeed him." The trustee or trustees of the residue were empowered, in case Benjamin L. Gorham, who was an insane person, should regain his health, in their discretion to pay over the property to him. In case Benjamin L. Gorham should die without issue, the portion of the residue then remaining in trust was to be divided into twelfths, and disposed of among certain persons as residuary legatees, in a manner specified.*

Peter C. Brooks was named executor in the will, and accepted the office. Francis C. Lowell, in accordance with the power conferred upon him in the above residuary clause, associated with himself George A. Bethune as co-trustee. Benjamin L. Gorham, who continued insane, died on June 2, 1889, intestate and without issue. The plaintiff is the sole surviving trustee, in succession to Francis C. Lowell and George A. Bethune, under the will of Benjamin Gorham, and is also the administrator of the estate of his son, Benjamin L. Gorham.

The principal questions to be determined are whether the pro-

---

* See *Hills* v. *Barnard, ante,* 67.

ceeds of a certain policy, as it is termed, or agreement by the Massachusetts Hospital Life Insurance Company, should be held by the plaintiff as such trustee under the will of Benjamin Gorham, or as administrator of the estate of Benjamin L. Gorham; and also whether the estate of Benjamin L. Gorham is bound to repay to the trust created by the will of his father, or by that of his brother, William C. Gorham, the money which has been expended therefrom for his support. The facts, as conceded at the trial, subject to any objection to their admissibility, are as follows.

The policy in question in the Hospital Life Company was for $8,102.67, and was purchased on February 1, 1856, by Peter C. Brooks, executor of the will of Benjamin Gorham. It was numbered 3090, and was placed by the company in an envelope indorsed by it, " 3090, Benjamin L. Gorham." On this envelope Brooks wrote as follows, immediately under the above indorsement: " $8,102.67 in the Massachusetts Hospital Life Insurance Company." And about an inch below that he again wrote, " The sum of $8,000 due from the estate of Mr. Benjamin Gorham to his son Benjamin L. Gorham, he being insane; and by the request of Mr. Gorham, no guardian has been appointed. I have deposited the above sum, with $102.67 interest, in the Life Office for Mr. Benjamin L. Gorham's benefit." Copies of this envelope and policy were exhibited. On November 14, 1855, Brooks had sold some securities belonging to the estate for $33,176.25, and the interest on $8,000 from November 14 to January 31, inclusive, at six per cent, is $102.67. The first account of the executor shows payments of legacies on November 15, 1855, to a considerable amount.

The above policy, and another policy in the Hospital Life Company, numbered 2876, which latter was an investment made by Lowell in the lifetime of Benjamin Gorham, and at his request, of a legacy to Benjamin L. Gorham, were both in Lowell's hands at the time of his death in 1874. A letter, dated in May, 1850, from Benjamin Gorham to Lowell, was also found among Lowell's papers, in which the latter was requested to take charge of and invest this legacy, made in the testator's lifetime for the benefit of his son, in a policy of the Hospital Life Company. Both policies were handed by Lowell's executors to the plaintiff,

in an envelope labelled, " 2786–3090, B. L. Gorham," which was produced at the hearing. Neither Lowell, nor his successors, nor Bethune, his co-trustee, ever included either of these policies in their inventories, or referred to them in their accounts of the trust property held by them under Benjamin Gorham's will.

Brooks filed two accounts as executor in the Probate Court; the first, filed on February 11, 1856, and allowed on March 3, 1856, shows a considerable sum paid to the trustees of the residue, and something over $18,000 retained by Brooks. The second, allowed on January 12, 1857, shows a payment, among others, of $2,016.72, to the trustees of the residue, for which they gave the following receipt : " $2,016.72. Boston, 26 December, 1856. Received of Peter C. Brooks, executor of the estate of Benjamin Gorham, the sum of two thousand and sixteen $\frac{72}{100}$ dollars, being the residue of the said Benjamin Gorham's estate now paid as by the provision of the will to the trustees of Benjamin Lowell Gorham. George A. Bethune, for self and co-trustee, for B. L. Gorham." This account shows a balance in the hands of Brooks of $8,000. Neither account makes any reference to the purchase of policy 3090, or to its accumulations, nor to the interest, amounting to $102.67, invested in that policy. Brooks, who died in 1880, never filed any further accounts, and was succeeded by an administrator *de bonis non* of the estate of Benjamin Gorham. The trustees of the residue of the estate of Benjamin Gorham, under his will, in their first account charged themselves as follows : " December, 1856, received from Peter C. Brooks, executor, balance $2,019.22, and take credit, December 29, 1856. Paid P. C. Brooks, ex'r, for advertising, $2.50."

William C. Gorham was a brother of Benjamin L. Gorham, and deceased during the lifetime of their father, leaving his property by his will for the benefit of Benjamin L. Gorham and other purposes. Benjamin Gorham left a memorandum as to his son's property, which was handed over by Brooks, as executor, to the trustees of the residue under the will. The trustees under the will of Benjamin Gorham, and the trustees under the will of William C. Gorham, have filed accounts nearly every year since 1856, the last accounts including the period to March 29, 1889, in which they take credit for all

the sums expended by them on behalf of Benjamin Lowell
Gorham, and these accounts have been allowed, after notice
to all parties interested by advertisement. The sums so ex-
pended in any year from each fund have always been much
less than the year's income of that fund.

The following facts were conceded in reference to the first
clause of the will of Benjamin Gorham. The property therein
referred to as having come to him from the estate of William
Cabot was received by Benjamin Gorham for his son under the
residuary clause of the will of William Cabot, which provided
that one half of the residue of his estate should be held by trus-
tees, among whom was Francis C. Lowell, and the income paid to
Benjamin Gorham for the benefit of the latter's children during
their minority, the principal to be paid to them when they be-
came of age, the share of any deceased child to go to the sur-
vivor or survivors. The property referred to in the same clause
as having come to Benjamin Gorham from " Grandmother Low-
ell's estate " was derived from the estate of the grandmother
of Benjamin L. Gorham, collected by Benjamin Gorham during
his son's minority as his natural guardian, no letters of guar-
dianship having been issued, and no bond having been given.
Benjamin Lowell Gorham became insane in 1831, he then be-
ing fifteen years of age, and after the death of his brother, in
1843, he was an only child. Peter C. Brooks and Francis C.
Lowell were his own cousins.

Upon these facts, the single justice who heard the case found
that Brooks intended to appropriate the money paid for the
policy numbered 3090 (the proceeds of which are here in ques-
tion) to the satisfaction of the legacy of $8,000 to Benjamin L.
Gorham, and that he and Lowell considered that they held the
policy in trust for Benjamin L. Gorham. This finding appears
to us justified by the evidence.

Those interested under the residuary clause of the will of
Benjamin Gorham contend that this policy was an investment
for the benefit of his estate by his executor, and that it is to
be treated as a part of that estate unadministered by the ex-
ecutor, but which has now been paid over by the administrator
*de bonis non* of the estate of Benjamin Gorham to the plaintiff,
who is the surviving trustee of Benjamin L. Gorham, and is

also administrator of his estate. Conceding that this legacy of $8,000 must be paid, they urge that it should only be now paid with six per cent interest thereon, which would be much less than the proceeds of the policy, and that the remainder is to be treated as a part of the residue given in trust for Benjamin L. Gorham. The investment in the policy made by Brooks was made with the addition of all the interest which had accrued thereon from the time he began to pay legacies. The indorsement above recited, — made by Brooks on the policy numbered 3090, stating that, this amount being due to Benjamin L. Gorham from his father's estate, and he being insane, and at the request of Benjamin Gorham no guardian having been appointed, he had deposited this sum with interest for "Benj. L. Gorham's benefit," — together with the fact that the policy is found among the papers of Lowell, who was the trustee not only under Benjamin Gorham's will, but also of other property of Benjamin L. Gorham, and to whom there is no reason to doubt it was delivered by Brooks, — affords very strong evidence that he intended to set this sum aside, and deemed that he had set it aside, as the $8,000 legacy. The declaration made by Brooks by his indorsement was admissible as a part of his action in purchasing the policy and transferring it to Lowell. He was embarrassed in dealing with it in the regular way by the fact that no guardian had been appointed, and that it was the wish of the father that none should be appointed, for his son. Instead of a payment of this legacy to the son, he had the power to make, and did make, a suitable investment of the sum. He set it distinctly aside as the property of Benjamin L. Gorham, placed it in the hands of the trustee of the property intended by Benjamin Gorham for his son's benefit, in the confidence that this disposition of the legacy would be ratified by Benjamin L. Gorham if he should recover his health, or by the representative of his estate should he decease. The evidence is not less strong that Lowell accepted it as the property of Benjamin L. Gorham. He had previously received from Benjamin Gorham, during his lifetime, a fund for the benefit of his son, and had invested it in a similar policy. With this policy the one in question was found at his decease among his papers, enclosed in the same envelope. It

must be concluded that he intended to hold it as the property of Benjamin L. Gorham. It is true that Brooks in his final account still charged himself with this $8,000. This may have been accident or error, or may have been the only method in which the account could legally have been stated, but it cannot control evidence so decided as the case affords of an intention to set aside and appropriate this policy to Benjamin L. Gorham. Nor does it seem important that the policy was made payable to Brooks. The property which he held was a sum which Benjamin Gorham treated as a debt, and deemed himself to have held as trustee. It ought to be placed where it would be earning the usual interest. Brooks could not so arrange the matter that there should be any one who could give him a valid receipt, if he complied with the wish of the father. Even if he took the policy in his own name, he delivered the evidence of this ownership, which declares it to be for Benjamin L. Gorham's benefit, to Lowell as trustee. An appropriation of specific assets to one who has a rightful claim upon them may be proved by parol, nor does it require the strongest evidence. *Childs* v. *Jordan*, 106 Mass. 321. *Sweeny* v. *Boston Five Cents Savings Bank*, 116 Mass. 384. *Brooks* v. *Rice*, 131 Mass. 408. Had the will directed Brooks in terms to set aside the legacy in trust, that his action would have amounted to this could not be questioned. It is not necessary to hold that this appropriation would have been binding on Benjamin L. Gorham or his estate. It may or may not have been so. The appropriation was valid and binding on the estate of the father, unless rejected by Benjamin L. Gorham or those representing him, and acceptance is fairly to be presumed if it would be advantageous to him. *Childs* v. *Jordan*, 106 Mass. 321. *Crowell* v. *Daggett*, 97 Mass. 434. The residuary legatees of Benjamin Gorham are not injured by holding this appropriation to have been valid. Had the money been paid over at once in liquidation of the legacy, they would have been in the same situation that they are now, if it be held that there was a binding appropriation of it. They lose nothing of any increase which property of theirs might have made. They only do not have the increase which has been made upon the legacy which was given to Benjamin L. Gorham. If further evidence were want-

ing that the executor, Brooks, so conducted as to make the appropriation of the policy complete, it is found not only in the fact that the policy for Benjamin L. Gorham's benefit was placed in the hands of Lowell, the trustee named in the will, but that the trustees under the will gave a full receipt for the residue due them from the estate, and have repeatedly since rendered accounts on the basis of the payment of the residue.

The expense of the support of Benjamin L. Gorham has been paid entirely from the trust funds created by the will of Benjamin Gorham, or by that of William C. Gorham, the brother, and there is a claim made that some of the property in the hands of the plaintiff should be appropriated to reimburse either in whole or in part these expenditures, and be transferred to the trusts created by these wills. It is suggested, on behalf of some of those interested, that if Brooks rightfully paid the $8,000 in satisfaction of the legacy to Benjamin L. Gorham, he became guardian in fact of Benjamin L. Gorham, and should have applied the income of the legacy to his support, and that the trustees were only entitled to pay out of the trust funds so much as might, in the words of Benjamin Gorham's will, be "necessary, from time to time, for the education or other wants of said B. L. Gorham," these words implying that these funds were only to be used when the income from Benjamin L. Gorham's own property was exhausted. In the will, the trustees were thus authorized "to pay over any of the income, or of the principal if necessary, from time to time," etc., and, both in the clause quoted from and other clauses, the words "if necessary" are connected with the use of the principal. The fullest discretion is given to expend liberally from the income of the trust fund, and from the principal if necessary, for the comfort or the gratification of the wishes and tastes of Benjamin L. Gorham. The trustees under the wills, both of Benjamin Gorham and of William C. Gorham, have made expenditures and filed accounts thereof under the ample authority given by both wills, and have exercised only the discretion they were entitled to exercise. These accounts have been allowed, and the amounts cannot now be recovered back, or charged against the estate of Benjamin L. Gorham. We see no ground for interfering with the discretion they have exercised.

We are of opinion, for the reasons above stated, that the fund in the hands of the plaintiff, derived from the proceeds of the policy, is the property of the estate of Benjamin L. Gorham.

*Instructions accordingly.*