ELLEN J. BURNETT, guardian, *vs.* EMILY M. WILLIAMS, executrix, & another
(and companion cases [1]).

Plymouth.   October 5, 6, 1948. — December 9, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Guardian,* Support of ward, Guardian for married woman, Guardian's accounts, Guardian ad litem. *Husband and Wife. Devise and Legacy,* Trust for support. *Trust,* Express trust: construction; Trust for support of beneficiary. *Probate Court,* Accounts, Notice, Parties.

Vacation of allowance of accounts of a guardian of an insane person which had been allowed on the assent of one whom the court had purported to appoint as guardian ad litem of the ward was proper where it appeared that no notice upon the accounts had been given to the ward.

Under a will which provided that a trust fund should be used in the discretion of the trustee "for the comfortable care and for the living expenses" of a married daughter of the testator and that it was the testator's intention that the daughter should "receive . . . [her] support and care so far as needed from" the trust fund, it was proper for

_____

[1] All the cases relate to accounts 1 to 10 filed by Herbert U. Williams as guardian of Mary C. Williams; an eleventh and final account filed in his behalf as such guardian after his death by Emily M. Williams, executrix of his will; a petition by Ellen J. Burnett, succeeding guardian of Mary C. Williams against Emily M. Williams, executrix, and another for vacation of the decree on accounts 1 to 10 of Herbert U. Williams as guardian and disallowance of certain items therein; and a petition by Emily M. Williams, executrix, for ratification of the payment of moneys for maintenance of Mary C. Williams and confirmation of allowance of the accounts 1 to 10 of Herbert U. Williams, guardian.

the trustee to make payments from the fund to the husband of the daughter as guardian of her, an insane person, for application to her support, and money so paid did not thereupon become property of the ward to which G.L. (Ter. Ed.) c. 201, § 25, was applicable; and it was also proper for the husband in his guardian's accounts to charge himself with receipt of such money and to claim credit for its disbursement for support of the ward without first having obtained consent or approval of the Probate Court.

PETITIONS, filed in the Probate Court for the county of Plymouth relating to accounts of Herbert U. Williams as guardian of Mary C. Williams, an insane person.

The cases were heard by *Davis*, J.

*J. F. Groden*, for Ellen J. Burnett, guardian.

*R. M. Robinson*, for Massachusetts Bonding and Insurance Company.

*J. O. Porter* of New York, (*A. S. Feinberg* with him,) for Emily M. Williams, executrix.

LUMMUS, J.   Mary C. Stoddard, now Mary C. Williams, married Dr. Herbert U. Williams in 1909, and lived with him in Buffalo, New York, until 1922, when she was committed to the Buffalo State Hospital as an insane person. They had no children.   On October 18, 1922, her husband was appointed by the Supreme Court of New York a "committee of the person and estate" of his insane wife.

Annie C. Stoddard, the mother of Mary C. Williams, lived in Plymouth.   By arrangement with Mrs. Stoddard and her daughter, Ellen J. Stoddard, now Ellen J. Burnett, Dr. Williams permitted his ward to come to Massachusetts in their care.   She was placed in Ring's Sanatorium in Arlington, and later in the Brattleboro Retreat in Brattleboro, Vermont.   In August, 1939, she was transferred to a State institution in Foxboro, Massachusetts, where she has remained.

Annie C. Stoddard died on March 18, 1928, leaving a will and one codicil.   After payment of her debts, funeral charges, and expenses of administration, she left all her estate to three trustees, one of whom was Ellen J. Stoddard, "to hold in trust for the benefit of my three daughters, Mary C. Williams, Elizabeth F. Stoddard [who also was insane, and has since died without issue], and the said Ellen J.

Stoddard, during their lives, the income thereof to be equally divided and expended for the benefit of my said three daughters, and I hereby also give my said trustees full power and authority to expend, if in their opinion it is necessary, the principal as well as the income of my said trust estate for the comfortable care and for the living expenses of my said daughters, provided the amount of income and principal expended shall be divided and used in equal portions for my said children, leaving the question of how much shall be expended for their benefit wholly to the discretion of my said trustees. . . . And I leave the whole question of what my three daughters may need for their support, and whether any of my real and personal property shall be sold or mortgaged by my said trustees to their judgment and discretion, it being my intention and will that my said daughters shall receive their support and care so far as needed from my estate." As the daughters should die, the survivors and the survivor were to receive the benefit of the trust estate. Upon the death of the last survivor of the three daughters, the trust was to end, and the whole estate was to pass to James H. Farris, the nephew of the testatrix, in fee simple, if living, and if not living to other persons. The will and codicil were allowed by the Probate Court in Plymouth County on June 11, 1928.

On May 14, 1928, Dr. Williams was appointed guardian of his wife Mary C. Williams in Plymouth County. He remained such guardian until he died at Buffalo on December 8, 1938. He left a gross estate of more than $70,000, and by his will he left nothing to his wife. There was uncontradicted evidence that his income in 1928, when he became guardian, was $4,000 a year as teacher in the University of Buffalo Medical School, and $1,500 to $2,000 as income from investments. He retired as teacher in 1934, and thereafter his income consisted of a pension of $2,000 a year, and income from investments of $1,000 to $1,200. He had no private practice. On January 30, 1939, his will was proved by the surrogate in Erie County, New York, and Emily M. Williams, his niece, was appointed executrix. After the death of Dr. Williams, Ellen J. Burnett, formerly

Ellen J. Stoddard, was appointed in Massachusetts his successor as guardian of Mary C. Williams, and still holds. that office.

The inventory of Dr. Williams as guardian of Mary C. Williams, filed on April 23, 1929, shows personal estate of $1,000, and nothing else. The personal estate shown by the inventory consisted of household furniture. After the death of the guardian that personal estate was transferred to Ellen J. Burnett, the new guardian. Ten accounts were filed by Dr. Williams as guardian, covering the period from his appointment on May 14, 1928, to May 14, 1938. His only receipts consisted of more than $20,000 received from the trustees under the will of Annie C. Stoddard, and smaller sums received from the investment of unexpended parts thereof in his hands. From those funds he spent nearly $15,000 for the care and maintenance of Mary C. Williams. Of the payments received from the trustees under the will of Annie C. Stoddard he had left on May 14, 1938, investments amounting to $6,233.35.

Ellen J. Burnett assented to the allowance of those ten accounts. On May 31, 1938, another person was appointed "guardian ad litem or next friend" for Mary C. Williams. It does not appear that any notice was given to her personally. The guardian ad litem or next friend assented to the allowance of those ten accounts on June 27, 1938, and on July 12, 1938, the Probate Court entered a decree allowing them.

On May 27, 1946, Ellen J. Burnett, the succeeding guardian of Mary C. Williams, filed a petition to vacate the decree allowing said ten accounts and to reopen said accounts, on the ground that Dr. Williams had applied the funds to the care and maintenance of Mary C. Williams without first obtaining the consent or approval of the Probate Court, in violation of G. L. (Ter. Ed.) c. 201, §. 25, and on the ground that the accounts were allowed without notice to the ward, and that without such notice no guardian ad litem could lawfully be appointed. On March 17, 1947, the Probate Court vacated and revoked the decree of July 12, 1938, "as to the ward," the said Mary C. Williams.

It was held in *Waitt* v. *Harvey*, 312 Mass. 384 (the second case), that service of notice upon the accounts of the guardian of a spendthrift must be made upon the ward personally and that in the absence of such notice the accounts were properly reopened.   This court said (page 397), "In the instant case the petitioner [ward] had no notice of the proceedings for allowance of the last four accounts and, therefore, was not before the court in the proceedings, and we think that until he had due notice thereof the judge was without authority to appoint a guardian ad litem to represent him."   This is in accord with the general chancery practice.   *Taylor* v. *Lovering*, 171 Mass. 303, 305.   And in *Anagnostopoulos* v. *Anagnostopoulos*, 307 Mass. 493, 494, 495, a proceeding in a Probate Court to permit a guardian to transfer certain stock to himself, it was said that the ward "even though insane was entitled to notice," even though a guardian ad litem is appointed.   For these reasons there was no error in the decree of March 17, 1947, revoking the decree of July 12, 1938.   See also *Young* v. *Tudor, ante,* 508.

The eleventh and final account of Dr. Williams as guardian was filed after his death by Emily M. Williams, the executrix of his will.   Included in the payments was $826.06 paid to the Brattleboro Retreat for the care and maintenance of the ward.   On March 17, 1947, those payments were ratified and confirmed by the Probate Court, and the final account was allowed.   Ellen J. Burnett as the new guardian of Mary C. Williams, and Thomas W. Prince, appointed guardian ad litem for her in the matter of said final account, appealed from the decree of March 17, 1947.

By a second decree dated March 17, 1947, payments made by Dr. Williams as guardian for the care and maintenance of Mary C. Williams were ratified and confirmed except as to $7,000 thereof, which sum was fixed as the amount that the guardian individually should contribute to the support of the ward and is charged against him on his accounts.   From that decree Emily M. Williams, executrix of the will of Dr. Williams, and Massachusetts Bonding and Insurance Company, the surety on his bond as guardian, as well as

Ellen J. Burnett, the new guardian, and Thomas W. Prince, guardian ad litem of Mary C. Williams, appealed.

General Laws (Ter. Ed.) c. 201, § 25, provides that "The guardian or conservator of a married woman shall not, except as provided in section ninety-six of chapter one hundred and twenty-three [which is immaterial here], apply the property of his ward to the maintenance of herself and her family while she is married, unless he is thereto authorized by the probate court on account of the inability of her husband suitably to maintain her or them, or for other cause which the court considers sufficient." Ellen J. Burnett, the new guardian of Mary C. Williams, contends that the money used for the care and maintenance of Mary C. Williams during the lifetime of Dr. Williams was the "property of his ward," Mary C. Williams, and that since Dr. Williams was not authorized by the Probate Court to apply it to her maintenance, his estate must be charged with the money so used and that it cannot be credited upon his accounts.

The money used by Dr. Williams for the maintenance of Mary C. Williams came from the trust fund under the will of Annie C. Stoddard. Under that will, nothing was given to her three daughters, to become their individual property. They were entitled only to be supported out of the trust estate. The only exception to that was created by the provision of the will that "the amount of income and principal expended shall be divided and used in equal portions for my said children." Since it cost more to support Elizabeth than to support Mary, that provision required payment to Mary or her guardian of enough to equalize their shares. But apart from that provision, no part of the income or principal became the property of Mary. Consequently G. L. (Ter. Ed.) c. 201, § 25, had no application. The testratrix declared that it was her "intention and will that my said three daughters shall receive their support and care so far as needed from my estate." One third of the trust estate was thus made the primary fund for the support of Mary C. Williams, and to the extent that that third was sufficient her husband, Dr. Williams, was exonerated from the burden of supporting her. The trustees had a right to

expend the income, and principal if need be, of one third of the trust fund by paying it directly to the persons furnishing support for Mary C. Williams. Scott, Trusts (1939) § 182.1. If they chose to employ Dr. Williams as guardian as a conduit for the purpose of paying for her support, the rights of the parties were not altered. The trustees saw to it that the guardian supported the ward properly. The money was rightfully paid for her support, in accordance with the will of Annie C. Stoddard, the trustees were entitled to have the payments allowed in the settlement of their accounts, and Dr. Williams as guardian, having debited himself with the money in his accounts, was entitled to balance those debits by crediting himself with the payments that he made.

That conclusion finds support in the decided cases. In *Crocker* v. *Crocker*, 11 Pick. 252, the testator gave to the plaintiff, Hannah Crocker, "a handsome support" during her life, to be furnished by the executors out of the estate. It was held that she was entitled to that support, even though she had the means and ability to support herself. In *Hills* v. *Putnam*, 152 Mass. 123, 132, property was given in trust, the income and the principal if necessary to be used for the education or other wants of an insane person. It was held that his entire support might be paid from the trust fund, and that his own private property was not bound to reimburse the trust fund. See also *Hoops* v. *Stephan*, 131 Conn. 138; *Rezzemini* v. *Brooks*, 236 N. Y. 184; *Matter of Clark*, 280 N. Y. 155, 161; *Matter of Gatehouse*, 149 Misc. (N. Y.) 648. In the case last cited a testator left property in trust to pay the income to his wife for life and provided that if the income should be insufficient to maintain his wife in her accustomed style of living, then the principal should be used so far as necessary to maintain her in that style. The wife remarried, and it was held that she was entitled to payments out of principal even though her new husband was able to support her.

The decree of March 17, 1947, reopening the first ten accounts, is affirmed. The decree of the same date allowing the eleventh account is affirmed. The decree of the same

date, disallowing accounts substituted for the first ten accounts, is affirmed. The decree of the same date allowing the first ten accounts with the exception of the sum of $7,000 spent for the care and maintenance of the ward, is modified by striking out the last two paragraphs thereof, and by allowing said accounts without qualification or exception. The decree of the same date disallowing said sum of $7,000 is modified by allowing the payment of that sum.

*So ordered.*