. HOLYOKE NATIONAL BANK & another, trustees, *vs.*
SOPHIA WILSON & others.

Hampshire.   December 7, 1965. — February 8, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Trust,* Use of principal, Trustee's discretion. *Probate Court,* Counsel fees, Vacation of decree.

After allowance of an account of trustees without objection, G. L. c. 206, § 24, would have permitted reopening of the account to correct a minor "manifest error" resulting in an overpayment by the trustees, but did not permit vacation of the decree allowing the account on the ground of alleged failure of the trustees to perform their duty. [227, 228]

In a proceeding respecting accounts of a testator's widow and a bank as trustees under his will, which gave them a broad power to use principal for the support of the widow, the income beneficiary of the trust for life, evidence as to the procedure whereby payments of principal were made to her upon her submission to the bank of requests therefor and information as to her needs and discussion of items by her with an officer of the bank did not show that the trustees merely acquiesced in the widow's requests in virtual abdication of their duty as trustees and failed to form reasonable judgments as to the propriety of the payments in the light of correct fiduciary principles. [227–228]

Under a will establishing a trust to pay the income to the testator's widow for life and authorizing the trustees, if "the net income from the trust fund . . . [should] be insufficient in . . . [their] opinion . . . for her comfort, maintenance and support, or for her care in an emergency, to pay out from time to time from the principal of the trust fund such amounts as in their sole discretion they . . . [might] deem just and reasonable for such purposes," substantial separate property belonging

to the widow and income therefrom were not to be taken into account by the trustees in determining the payments of trust principal to be made to her. [228–229]

Awards of fees to counsel for trustees under a will and the life beneficiary of the trust in a proceeding respecting the trustees' accounts were excessive in view of the issues and questions involved and the size of the trust fund and the fact that the awards were substantially more than counsel had sought in motions filed before decree, and were ordered by this court to be reduced to the amounts originally sought; and an award to counsel for the remaindermen was ordered to be similarly reduced. [230]

PETITIONS filed in the Probate Court for the county of Hampshire to revoke a decree allowing an account of trustees, and for the allowance of other accounts.

The case was heard by *Jekanowski, J.*

*Clarke S. Lyon (Eliot P. Brooks* with him) for Sophie Wilson & others; *Kenneth B. Bowen,* guardian ad litem, pro se, also with him.

*Gerald D. McLellan* for Holyoke National Bank, trustee (*Raymond R. Cross,* for Agnes G. Wilson, with him).

SPALDING, J. George G. Wilson died on December 19, 1955, and his will was admitted to probate in January of 1956. He was survived by his wife, Agnes G. Wilson (Mrs. Wilson). Under the will Mrs. Wilson received $10,000 outright. The residue of the estate was placed in trust, the trustees of which are Mrs. Wilson and the Holyoke National Bank.

The present controversy relates to the first four accounts filed by the trustees. The first account having been allowed, the remaindermen petitioned the court to vacate the decree allowing it. They also opposed the allowance of the trustees' second, third and fourth accounts. A decree was entered dismissing the petition to vacate, and a decree was entered allowing the second, third and fourth accounts. From these decrees, the remaindermen and a guardian ad litem appealed.[1] The evidence is reported. The judge made no findings of fact, but his decrees in favor of the

_____

[1] A guardian ad litem was appointed to represent persons unborn or unascertained and certain minors.

trustees import a finding of every fact essential to support them. *Berry* v. *Kyes,* 304 Mass. 56, 57. *Attorney Gen.* v. *Woburn,* 322 Mass. 634, 635.

The clause of the will which establishes the trust directs the trustees "To pay the net income of this Fund as often as quarterly to my . . . wife [Agnes] during her lifetime." Upon the death of Mrs. Wilson, the trust principal is to be distributed to the testator's nieces, Sophia Wilson (60%) and Jessie W. Braithwaite (20%), and his nephew, Ralph S. Wilson (20%), or to their issue by right of representation. The will then provides: "(3) In case the net income from the trust fund shall be insufficient in the opinion of the trustees, at any time during the lifetime of my said wife for her comfort, maintenance and support, or for her care in an emergency, to pay out from time to time from the principal of the trust fund such amounts as in their sole discretion they may deem just and reasonable for such purposes." The subject of this dispute is the propriety of various amounts of principal paid to Mrs. Wilson, pursuant to the quoted clause, during approximately the first four years of the trust's existence.

In addition to the $10,000 bequest under the will, Mrs. Wilson received, by reason of the testator's death, $18,349.73 in proceeds from life insurance, $4,300 from a joint bank account, and $29,500 representing the testator's share of the equity in their jointly owned residence. Mrs. Wilson testified that at the time of her husband's death she owned separate property consisting of stocks, bonds, and cash in the amount of $86,330. She had acquired this property from her grandmother's estate, and from her own employment which began eight years prior to her marriage with the testator in 1922; this employment continued with only minor interruptions until 1953. During the period covered by the four challenged accounts, her separate property totaled approximately $148,000.

The procedure by which payments of principal were made to Mrs. Wilson was as follows: At periodic intervals, often coinciding with her quarterly receipt of the trust in-

come, Mrs. Wilson submitted a requisition form specially designed for the administration of the trust, which set forth her "living expenses." The expenses were itemized and consisted of payments for clothing, rent, utilities, car maintenance, church donations, and so forth, and cash expenses, which were explained by a separate statement and which have on occasion included portions of various traveling expenses. Also listed were statements from several department stores for substantial amounts, but without itemization of the articles purchased, and sums representing the payment of State and Federal income taxes arising both from her separate property and from the trust. Mrs. Wilson totaled these expenses, deducted the payments of trust income received by her within that period, and "request[ed]" payment of the difference from the trust principal. She testified that such expenses as were occasioned by gifts to her own family were omitted from the statement of her living expenses.

After completing the requisitions, Mrs. Wilson would submit them to the bank. The trust officer checked them and discussed with her any items "that looked a little bit out of line." The officer never found occasion to reduce any of the listed items, regarding each as a "reasonable" statement of her living expenses.

During the period of the four challenged accounts (roughly from May, 1956, through May, 1960), Mrs. Wilson received $24,719.79 in trust income and $27,067.14 in trust principal. In the same period she received $20,812.24 of income from her separate property. The trust officer testified that he was aware of Mrs. Wilson's separate property, and income therefrom, but that by his interpretation of the will these assets were not to be taken into account in determining the amounts of trust principal to which she was periodically entitled. He further testified that the principal of the trust has increased in actual value, in spite of the invasions on behalf of Mrs. Wilson. Evidence was also introduced to show that the book value of the trust assets has decreased during the period in question from $153,015.16 to $140,578.38.

The judge rightly dismissed the petition to vacate the decree allowing the trustees' first account. This account had been allowed without objection. Where a final decree has been entered on an account it "shall not be impeached except for fraud or manifest error." G. L. c. 206, § 24. *Porotto* v. *Fiduciary Trust Co.* 321 Mass. 638, 642. In this first accounting period, from May 3, 1956, to May 3, 1957, the trustees paid Mrs. Wilson $9,076.18 in trust principal to supplement the $7,915.99 which she had received in trust income. On the requisition forms covering this period, Mrs. Wilson listed $3,995 as cash expenditures which were to some extent supported by written statements with itemized expenditures but which were never verified by the corporate trustee. Because none of these expenditures were challenged or changed, the remaindermen urge that in effect the corporate trustee merely acquiesced to Mrs. Wilson's requests.

In exercising a power of this sort the trustees are unquestionably under an obligation to give serious and responsible consideration both as to the propriety of the amounts and as to their consistency with the terms and purposes of the trust. See Scott, Trusts (2d ed.) §§ 187.2, 187.3; *Corkery* v. *Dorsey,* 223 Mass. 97, 101. Such a power calls for the exercise of a reasonable judgment arrived at with proper regard to accepted fiduciary principles. *Copp* v. *Worcester County Natl. Bank,* 347 Mass. 548, 551. *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 350. There was testimony by the trust officer, however, to the effect that upon receiving each requisition, he reviewed the items, discussed them with Mrs. Wilson, compared them with her submitted statement, and formed the judgment that the amounts requested were reasonable. As for the argument that this procedure was inadequate, we are aware of no principle of law requiring a trustee to conduct an item by item inquiry or verification of the expenditures claimed by a beneficiary. See *Matter of Clark,* 280 N. Y. 155, 161. Moreover, the fact that the trustees overlooked a discrepancy between their own account and Mrs. Wilson's requisition, resulting in an overpayment to her of $200.23,

need not have convinced the judge, and does not convince us, that the corporate trustee failed to scrutinize the requisition forms and to form an opinion as to their reasonableness.   In regard to this minor error, however, it would be appropriate to reopen the first account for the limited purpose of correcting the error and ordering the repayment of the sum to the trust fund, since it is an error obvious from a comparison of the account and the requisition form.   See *Porotto* v. *Fiduciary Trust Co., supra,* pp. 643–644.   The appellants, however, do not seek this relief.   They seek to impeach the first account on the ground that it appears on its face that the trustees merely acquiesced in Mrs. Wilson's demands and virtually abdicated their duties as trustees. This ground is also urged in opposition to the allowance of the second, third and fourth accounts.   We are of opinion that the decree dismissing the petition to vacate should stand, and that there is no basis to disallow the other accounts.   The power to invade principal contained in the will was sufficiently broad to permit what was done here.

The appellants challenge all four accounts on the ground that it is an abuse of discretion under the terms of this trust not to consider Mrs. Wilson's other resources in determining whether and to what extent she is entitled to receive payments from principal.   Whether or not a beneficiary's separate resources are to be considered is a question of interpretation.   Scott, Trusts (2d ed.) § 128.4, p. 939.   Thus, in certain instances, we have held that amounts for the support of a beneficiary were properly determined without reference to the beneficiary's separate property.   *Crocker* v. *Crocker,* 11 Pick. 252, 255.   *Hills* v. *Putnam,* 152 Mass. 123, 132.   *Burnett* v. *Williams,* 323 Mass. 517, 523.   But where there is language manifesting a contrary intention, the usual case being where a trustee's discretion to pay is qualified by such words as "[when] in need" or "if necessary," we have reached the opposite result.   *Stevens* v. *Winship,* 1 Pick. 318, 319. *Corkery* v. *Dorsey,* 223 Mass. 97, 100.   *Lumbert* v. *Fisher,* 245 Mass. 190, 192, 193–194.   For a good discussion of this distinction, see *Hoops* v. *Stephan,* 131 Conn. 138.

Here the trustees are empowered to invade principal when it is their opinion that the trust income is "insufficient . . . for . . . [Mrs. Wilson's] comfort, maintenance and support." This language reveals the unequivocal intention that Mrs. Wilson's living expenses are to be borne exclusively by the trust income and principal. But even if the import of this language were not so clear, the inference of this type of direction is that the settlor intended that the beneficiary should receive support from the trust estate even though she might have other resources. See Scott, Trusts (2d ed.) § 128.4 (p. 939), and cases cited in fn. 3. See also annotation in 101 A. L. R. 1397, 1465 et seq.

Nothing said in *Copp* v. *Worcester County Natl. Bank,* 347 Mass. 548, alters this result. That case involved the construction to be given a clause authorizing the trustee "to spend from the principal . . . such sum or sums, not to exceed [f]ive [h]undred . . . dollars, as may be necessary or desirable for the proper support and maintenance of my . . . wife, if the income . . . is not sufficient to accomplish the aforesaid purpose." After holding that a $500 limitation in the invasion clause did not refer to the aggregate payments of principal which could be paid the beneficiary during her life, the court went on to say that in exercising its discretion under the instrument, ". . . the trustee is to take into account all the relevant circumstances known to it, including . . . [the beneficiary's] then existing and potential resources." The issue now before us was not presented in the *Copp* case. We have no reason to doubt the correctness of the quoted statement as applied to the peculiar facts of that case.[2] We do not, however, construe it as impairing the authority of the cases cited above nor as laying down a broad principle that the life beneficiary's other resources must always be taken into consideration before there can be an invasion of principal.

---

[2] The trust fund was small ($15,000), the widow was in "straightened circumstances," and consideration of all resources available to her was there peculiarly appropriate in view of the possible inadequacy of the fund for her future needs.

Finally, the remaindermen appeal from the decree ordering the payment of fees of $7,500 each to counsel for Mrs. Wilson in her individual capacity, and to counsel for the bank and Mrs. Wilson as cotrustees. It appears that both counsel filed motions prior to the Probate Court's decree, each specifically requesting $4,500 for their services. The record does not reveal any basis for awarding this substantial increase over what the attorneys themselves considered a reasonable fee. The issues of fact were not complicated, and the questions of law were not of unusual difficulty. In view of these factors and the size of the trust, we are of opinion that the allowance of fees totaling $23,500 [3] was excessive. Accordingly, we modify the final decree and direct that it provide that counsel for Mrs. Wilson and the trustees receive the fees originally requested, namely, $4,500, and that a similar amount be awarded to counsel for the remaindermen instead of the $7,500 mentioned in the decree. This aspect of the case comes within the principles enunciated in *Hayden* v. *Hayden,* 326 Mass. 587, 596, where we stated: "Where payments are to be made out of the property of litigants to or for the benefit of counsel who may not have been employed by those whose estates are thus diminished, the standard is not the same as that applied in an action by an attorney against a client with whom he has voluntary contractual relations. . . . Fees in . . . [cases of the former type] are awarded on 'strictly conservative principles.' "

The decree dismissing the petition to vacate the allowance of the first account is affirmed. The decree allowing the second, third and fourth accounts is to be modified by providing for awards of counsel fees in accordance with this opinion and, as so modified, it is affirmed. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*

---

[3] The final decree also ordered the payment of $7,500 to counsel for the remaindermen pursuant to their request for "reasonable counsel fees and expenses," and the payment of $1,000 to the guardian ad litem, "for his expenses and services in these matters." No appeal has been taken from these portions of the decree. The total fees ($23,500) ordered in the decree were to be paid from the trust principal.