BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
MARION KEEN BOYNTON & others[1]

Plymouth.   December 14, 1982. — January 10, 1983.

Present: BROWN, ROSE, & DREBEN, JJ.

*Trust*, Trustee's discretion, Use of principal.

Under an inter vivos trust providing for the payment of income to the
   donor's widow for life and the remainder to the donor's issue, the
   widow's separate resources, including the net proceeds from her sale of
   the marital home which she had distributed to her children, were to be
   considered by the trustee in exercising its discretion whether to invade
   the principal "as it deems necessary" for the widow's support.
   [105-107]

CIVIL ACTION commenced in the Plymouth Division of the
Probate and Family Court Department on June 3, 1981.

The case was heard by *Asack*, J.

*Walter Lincoln Boyden* for the plaintiff.

*Benjamin A. Stein* for Marion Keen Boynton.

DREBEN, J.   This is an action by the trustee under a decla-
ration of trust of Nehemiah Boynton, Jr., seeking instruc-
tions as to whether, in exercising its discretionary power to
invade principal for the support of the donor's widow,
Marion Keen Boynton, her separate resources are to be con-
sidered.  A judge of a Probate Court ruled that such assets
should be taken into account.  We affirm.

The following facts are undisputed.  Marion Keen Boyn-
ton was Nehemiah's second wife.  There were no children
of their union, but each had children from a previous mar-
riage.  On December 1, 1950, prior to their marriage, they
entered into an agreement which provided that each would
retain his or her property to the same extent as if he or she

---

[1] Children and other descendants of Nehemiah Boynton, Jr.

were still single, that each had the right to dispose of such property and could leave it to his or her children or otherwise, and that each waived his or her rights in the estate of the other except as otherwise provided in mutual wills executed on the same day, which were incorporated by reference into the antenuptial agreement. At the time of her marriage to Nehemiah, Mrs. Boynton owned a certain parcel of real estate in Duxbury which, after their marriage, became the marital home.

Nehemiah replaced his 1950 will with an inter vivos trust dated August 4, 1958. According to an affidavit executed by him on the same day, his intention in establishing the trust was "to preserve for my said wife all the rights and benefits given her under said previous wills and Ante-nuptial Agreement."

Article Fourth, par. 2, of the trust provides:

> "If at the time of the donor's death, the said Marion Keen Boynton is his legal wife and she survives him, the net income of the trust shall be paid to her at least as often as quarterly during her lifetime, and in addition if such net income should be insufficient to provide for her comfortable maintenance, support and medical care, the trustee in its sole discretion may from time to time use such part of the principal as it deems necessary therefor."

Upon the death of Mrs. Boynton, the remainder will be payable to Nehemiah's issue then living by right of representation.

Nehemiah died in 1960, and, since that date, the income of the trust has been paid to Mrs. Boynton. In 1977 she became a patient in a nursing home. The income of the trust during the years 1977-1980 averaged $6,700, and Mrs. Boynton also received an annual income of about $4,233 from Social Security. Her expenses at the home exceeded her combined income from Social Security and the trust, and from 1977 to 1980 the trustee exercised its discretionary

power to make principal payments. It paid her an average of $6,600 annually from principal in those years.

In September, 1980, Mrs. Boynton sold her Duxbury home, and in March, 1981, her counsel informed the trustee that she had distributed the net proceeds of $63,634.18 in equal shares to her two children. After the sale, the children of Nehemiah questioned the continuation of the discretionary principal payments, and the trustee advised Mrs. Boynton's counsel that such payments would stop. Her counsel objected, and the trustee filed the present complaint for instructions. In her answer to the complaint, Mrs. Boynton sought reimbursement from the trust to one of her sons for sums which he had paid to the nursing home and for medical expenses since the time of termination of principal payments. A guardian ad litem was appointed for minors and unascertained persons. His report recommended that principal not be invaded and that Mrs. Boynton be ordered to recover her assets.

The probate judge, upon the basis of the foregoing facts and the report of the guardian ad litem, found that if Mrs. Boynton's assets of $63,000 had been retained and invested, she could reasonably have expected to receive approximately $6,000 a year and could still have left the $63,000 to her heirs. He held that these assets were required to be considered by the trustee and that the "trustee would be exercising sound discretion" in not invading principal at this time.

We think the probate judge properly construed Art. Fourth, par. 2, of the trust. Whether Mrs. Boynton's separate resources are to be considered by the trustee in exercising its discretion under the clause which provides that if the income is insufficient for her support, the trustee "in its sole discretion may from time to time use such part of the principal as it deems *necessary* therefor" (emphasis supplied), is a "question of interpretion" of the intent of Nehemiah Boynton, Jr. *Holyoke Natl. Bank* v. *Wilson,* 350 Mass. 223, 228 (1966). The Supreme Judicial Court has stated "that where such terms as 'when in need' or 'if necessary' are used, other resources of the life beneficiary are to

be considered." *Woodberry* v. *Bunker,* 359 Mass. 239, 243 (1971). *Copp* v. *Worcester County Natl. Bank,* 347 Mass. 548, 551 (1964). See also *Lumbert* v. *Fisher,* 245 Mass. 190, 193-194 (1923); *Corkery* v. *Dorsey,* 223 Mass. 97, 102-103 (1916); *Stevens* v. *Winship,* 1 Pick. 318, 327 (1823). Nehemiah Boynton, Jr., used such a term.

In addition, the circumstances of the parties at the time the instrument was drawn shed light on the meaning of the clause. See *Crocker* v. *Crocker,* 11 Pick. 252, 256 (1831). Article Fourth, par. 2, replaced and was presumably intended as the equivalent of a provision in the December 1, 1950, will which was incorporated in the antenuptial agreement. That agreement set forth the parties' intent to retain the right to leave their property to their respective children and to waive their rights in the other's estate.[2] We do not think it consistent with that intent to ignore the outside resources of Mrs. Boynton in determining when principal is "necessary" for her support, or to permit Mrs. Boynton, when in need of income for herself, voluntarily to dispose of productive assets so as to deplete her husband's estate and the shares of his children in order to increase the amounts to be received by her own. Compare *Dana* v. *Dana,* 185 Mass. 156, 159 (1904); *Lumbert* v. *Fisher,* 245 Mass. at 195 (conveyances to daughter were for life beneficiary's benefit and did not require greater amount to be paid for her support than if she had retained the property).

The record before us does not indicate the terms on which the net proceeds of the sale of the real estate were distributed to Mrs. Boynton's children, and we do not consider whether such assets are in fact or in law impressed with a trust for her benefit or whether Mrs. Boynton is entitled to a reconveyance of these assets on some principle of mistake or restitution or otherwise. We in no way imply that, even if

---

[2] We note that at all times between the time of the execution of the antenuptial agreement and the time of the death of Nehemiah Boynton, Jr., the rights of Mrs. Boynton under G. L. c. 191, § 15, would have been $10,000 plus a life estate in the rest of her husband's estate. Such rights were far less than the benefits she received under the inter vivos trust.

an outright gift was in fact attempted, the transferred resources are not to be considered by the trustee. On this record, we decide only that the trustee is required, under the terms of the trust, to consider Mrs. Boynton's other resources, including the resources distributed to her children, in determining whether and to what extent she is entitled to receive payments from the principal of the trust.

*Judgment affirmed.*